Michael F. Merritt, Creve Coeur, for plaintiff-appellant.

R.C. Wuestling, Wuestling, James & DeVoto, St. Louis, for defendant-respondent.

Raymond SCHULTE,
Plaintiff–Appellant,

v.

SAFECO LIFE INSURANCE COMPANY, Defendant–Respondent.

No. 54294.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 15, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1988.

Application to Transfer Denied
Feb. 14, 1989.

GARY M. GAERTNER, Judge.

Plaintiff Raymond Schulte (hereinafter appellant) appeals from judgment in favor of defendant Safeco Life Insurance Company after a nonjury trial in an action to recover medical expenses. Appellant alleged that the major medical insurance policy issued by Safeco to appellant and his dependants through appellant's employer provided coverage for medical expenses incurred by appellant's son Mark Schulte. On appeal appellant asserts that the trial court erred in concluding the policy did not provide coverage for the above-mentioned expenses. We reverse.

Appellant was employed by Progressive Wholesale Supply Company from June 1980 through December 31, 1981, when Progressive Wholesale told him he was laid off. Progressive rehired appellant on July 3, 1982. Safeco and Progressive had a group insurance policy during 1981. Appellant was insured by the policy as a non-contributory individual. Mark Schulte was appellant's dependent at all times relevant to this action. Dr. Jerry Bamshad treated Mark Schulte for acne from January 16 through February 24, 1982. On February 26, 1982, Dr. W. Kutryb diagnosed Mark Schulte as having severely infected cystic acne of his entire anterior chest wall. In Dr. Kurtyb's opinion, Mark was disabled on February 26, 1982, to the extent he was

unable to perform any of the usual and customary activities of a person in good health of the same sex and age. Mark Schulte was admitted to the hospital on March 2, 1982, for the infected condition of his chest. He subsequently underwent several skin grafts and was discharged on April 10, 1982. Appellant incurred medical expenses of $17,299 resulting from his son Mark's condition. Appellant submitted a claim to Safeco for his son's medical expenses which Safeco has refused to pay. Safeco asserts that Mark Schulte's medical expenses were not covered by the insurance policy.

The circumstances surrounding the layoff manifest various viewpoints as to when the layoff began. Appellant was on vacation for the week preceding December 31, 1981, when the president of Progressive, Richard Burkett, met with appellant regarding the temporary layoff. In an affidavit offered and admitted into evidence at trial, Burkett stated that on December 31, 1981, he informed appellant of his temporary layoff to be effective January 1, 1982. However, in a complaint form submitted to the Missouri Division of Insurance, appellant stated that because his employment terminated on December 31, 1981, his insurance benefits terminated as of that date. Progressive paid premiums for appellant's coverage through December 31, 1981, but did not pay a premium for appellant in January or February 1982.

The controlling provision of the policy appears in the Termination of Employment clause. The clause states as follows:

Your employment for insurance purposes terminates on the date you cease active work with your Participating Employer, except that, in the circumstances specified below, your employment shall be deemed to continue for insurance purposes, for the coverages specified, ...

...

| While Employee is Absent from Work Due to | Employee May Be Deemed to Continue for this Period | For These Coverages |
|---|---|---|
| (a) ... | | |
| (ii) Temporary Layoff | Not beyond end of the month next following the month in which layoff begins | All coverages other than Disability Income |

The trial court determined that appellant was only entitled to a one month grace period from the date he ceased active work. The court thus concluded that appellant's coverage terminated on January 31, 1982.

In this court-tried case we will reverse the trial court's decision if there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1976).

Appellant asserts on appeal that the trial court erred in concluding that Mark Schulte's medical expenses were not covered by the policy. Appellant argues that he ceased active work on December 31, 1981, thus the layoff began in January 1982. The policy extends coverage to the "end of the month following the month in which the layoff begins." If we were to accept appellant's assertion that the layoff began in January, appellant's coverage under the policy would have continued through February 28, 1982. Mark Schulte was diagnosed as disabled on February 26, 1982, before coverage would have terminated, therefore coverage would extend an additional ninety days pursuant to the Extension of Benefits clause.

The determinative issue thus becomes: in which month did the layoff begin? If the layoff began on December 31, 1981, insurance benefits terminated on January 31, 1982. Mark Schulte's medical expenses incurred after January 31, 1982, would not be covered. If the layoff began after December 31, 1981, *i.e.* in January 1982, insurance benefits continued through February 28, 1982. Since Mark Schulte became total-

ly disabled before February 28, 1982, benefits would extend an additional ninety days and would cover the medical expenses at issue. The policy does not expressly state when a layoff begins.

When an insurance policy's provisions lend themselves to alternative interpretations, we will adopt the interpretation that affords greater coverage. *Noll v. Shelter Insurance Cos.,* 731 S.W.2d 393, 395 (Mo. App., E.D.1987). ·Language is ambiguous if it is open to alternate interpretations; such ambiguous language will be construed against the insurer. *Robin v. Blue Cross Hosp. Service,* 637 S.W.2d 695, 698 (Mo. banc 1982).

The policy does not define a temporary layoff or state what action or event triggers a layoff period. Safeco urges that a layoff begins the day an employee ceases active work. We find no support for this interpretation in the policy. Appellant argues that the layoff period begins the day after an employee ceases active work. The Termination of Employment clause provides coverage "While Employee is Absent for Work Due to ... Temporary Layoff." Appellant was not absent from work on December 31, 1981, due to a temporary layoff, rather he was absent from work due to vacation. January 4, 1982, was the first day appellant was absent from work due to a temporary layoff.[1] Thus, construing the policy in such a way as to provide greater coverage, we conclude that the layoff began in January 1982. *Noll,* 731 S.W. 2d at 395. Therefore, insurance coverage continued through the end of February 1982. Assuming Mark Schulte was totally disabled on February 28, 1982,[2] insurance coverage continued for an additional ninety days.

Finding the trial court erred in applying the law, we reverse the judgment of the trial court and remand with directions to enter judgment not inconsistent with this opinion.

GRIMM, P.J., and KAROHL, J., concur.

---

1. January 1, 1982 was a holiday; January 2 and 3, 1982, were weekend days. Thus appellant testified that January 4, 1982, was the first scheduled work day. Safeco makes much of the fact that accrued vacation and sick leave could indefinitely "toll" the beginning of the layoff. We, however, view vacation and sick leave as rights accrued prior to the layoff which would not affect a determination as to the beginning of a layoff.

2. The trial court did not specifically find that Mark Schulte was totally disabled on February 28, 1982, as defined in the policy. Our review of the record, however, reveals no evidence to the contrary.