Linda K. ROBIN, Appellant,

v.

BLUE CROSS HOSPITAL SERVICE, INC., et al., Respondents.

No. 63671.

Supreme Court of Missouri, En Banc.

Aug. 31, 1982.

Joseph F. Devereux, Jr., St. Louis, for appellant.

Martin J. Toft, Robert F. Schlafly, Ann E. Buckley, Henry J. Mohrman, St. Louis, for respondents.

HIGGINS, Judge.

This appeal was transferred by the Missouri Court of Appeals, Eastern District, by an opinion which affirmed summary judgment for respondents under the principle that the court had no power to rewrite an unambiguous insurance contract, because of recent Western District cases [1] which have recognized the theory of reasonable expectation of the average insured and because of the general interest and importance of the case as applied to health service contracts. Mo. Const. art. V, § 10. In question is whether appellant's entitlement to benefits depends upon continued payment of required dues; and if so, whether such conditions may be overcome by a construction based upon a theory of reasonable expectations from a contract alleged to be a contract of adhesion. Affirmed.

Prior to October 31, 1977, Linda Robin was employed at Community Memorial Hospital in Farmington, Missouri, and was enrolled in group hospital service plans. The dues required in the plans were paid by the hospital. Ms. Robin was injured in an automobile accident in March, 1977. Because she was unable to return to work, her employment was terminated on October 31, 1977. The dues required by the health plan were discontinued the same day. Subsequently, Ms. Robin incurred additional medical expenses as a result of the same

1. *Spychalski v. MFA Life Ins. Co.*, 620 S.W.2d 388 (Mo. App. 1981); *Estrin Const. Co. v. Aetna Cas. & Surety Co.*, 612 S.W.2d 413 (Mo. App. 1981).

injuries. The insurer notified her of the option to convert to an individual membership by paying a specified premium in advance; she failed to pay this premium and her membership was terminated. Thereafter, the insurers, pursuant to the terms of the membership certificate, refused to pay expenses incurred after October 31, 1977.

Appellant contends the insurance contract involved is an adhesion contract and requests this court adopt the reasonable expectation rule of construction set out in *Estrin Construction Co. v. Aetna Cas. & Surety Co.,* 612 S.W.2d at 413, and *Spychalski v. MFA Life Ins. Co.,* 620 S.W.2d at 388. This rule provides the objective reasonable expectations of adherents and beneficiaries to insurance contracts will be honored even though a thorough study of the policy provisions would have negated these expectations. *Spychalski,* 620 S.W.2d at 396; *Estrin,* 612 S.W.2d at 420. The respondents contend construction of the contract based on an objective analysis of appellant's reasonable expectations is not appropriate in this case.

Appellant's argument is predicated upon the existence of an adhesion contract between herself and the insurers. An adhesion contract is a form contract created by the stronger of the contracting parties. It is offered on a "take this or nothing" basis. *See Estrin,* 612 S.W.2d at 418 n. 3. Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform. 3 Corbin on Contracts, § 559 (1960). These terms unexpectedly or unconscionably limit the obligations and liability of the drafting party. *See* Corbin on Contracts, § 559 (Kaufman Supp. 1980). Because of these circumstances, some courts look past the wording of the contract and consider the entire transaction in order to effectuate the reasonable expectations of the parties. 3 Corbin on Contracts, §§ 534–542 (1960); Restatement (Second) of Contracts, §§ 226–227 (Tentative Draft 1973).

## I.

▮ The contract involved in this case resembles an adhesion contract only in that it was offered to the appellant, not by the insurer who drafted the contract, but by her employer, on a "take this or nothing" basis. It lacks the oppressive features of adhesion contracts. This contract was a product of negotiation between two parties, Community Memorial Hospital, the employer, and Blue Cross Hospital Services, Inc., its insurer. Neither party can be characterized as "the stronger party." Several different group health plans were offered by BCHS; Community Memorial was not faced with a "take this or nothing" situation. Nor is there evidence that Community Memorial was forced to deal with BCHS; Community Memorial and BCHS were on equal footing. Appellant's absence from the bargaining with BCHS does not justify application of the remedy she seeks. She and the other hospital employees were represented by the hospital and benefitted in its negotiations with BCHS. Community Memorial had a definite interest in securing a health care plan for their employees. Such plans are considered important benefits and are used to attract new employees and retain present employees. The hospital, therefore, has a great interest in providing the most attractive feasible plan. The employees could not have secured medical protection on more favorable terms had they negotiated individually with BCHS.

Besides lacking bargaining power, weaker parties are often unable to look elsewhere for more attractive contracts. Such is not true in this case. There are literally hundreds of health insurance plans available to the consumer. There is no evidence that the appellant was unable to contract individually for medical care protection.

It is not necessary to consider the *Estrin* and *Spychalski* decisions on their merits because both cases are readily distinguished from this case. Neither involved a group health plan; both were individual policies; the negotiations regarding them were between the individual insured and the insurer. Appellant's reliance on these cases is, therefore, misplaced. Accordingly, the

principles of adhesion contracts as applied in *Estrin* and *Spychalski* are not applicable to this case.

This conclusion is supported by *Madden v. Kaiser Foundation Hospitals,* 17 Cal.3d 699, 131 Cal.Rptr. 882, 552 P.2d 1178 (Cal. 1976). In *Madden,* the California Board of Retirement negotiated a medical benefit plan with Kaiser. The plan contained an arbitration clause. Madden, a member of the plan, contracted hepatitis after an operation and sued for malpractice. She claimed not to be bound by the arbitration provision because it was part of an adhesion contract. *Madden,* 131 Cal.Rptr. at 884–85, 552 P.2d at 1180–81. The court held the agreement was not an adhesion contract because Madden had a choice of plans, including the option of independent medical coverage, and because it was negotiated by the state board which had bargaining strength equal to Kaiser's that was used to obtain terms favorable to the employees.

The force of this decision is noted in Corbin on Contracts, § 559c, at 328 (Kaufman Supp. 1980), where the author concurs with the court so long as existence of a choice by the employee is real and the representation by the institution was actual. As noted earlier the appellant's employer had an actual interest in negotiating the health care contract for the benefit of its employees; there is no indication appellant had no other option in obtaining health care protection.

## II.

■ Absent adoption of the rules pertaining to adhesion contracts, in this case, the insurance contract in question remains for construction under existing law. The rules of construction applicable to insurance contracts require that the language used be given its plain meaning. *Madison Block Pharmacy, Inc. v. United States Fidelity & Guarantee Co.,* 620 S.W.2d 343, 346 (Mo. banc 1981); *Moskowitz v. Equitable Life Assur. Soc. of the United States,* 544 S.W.2d 13, 20 (Mo. banc 1976). If the language is unambiguous the policy must be enforced according to such language. *Moskowitz,* 544 S.W.2d at 20; *State Farm Mutual Automobile Co. v. Thomas,* 549 S.W.2d 616, 618 (Mo. App. 1977). If the language is ambiguous it will be construed against the insurer. *Meyer Jewelry Co. v. General Insurance Co. of America,* 422 S.W.2d 617, 623 (Mo. 1968). Language is ambiguous if it is reasonably open to different constructions; and language used will be viewed in light of "the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Stafford v. Travelers Ins. Co.,* 530 S.W.2d 23, 25 (Mo. App. 1975).

■ The pertinent terms of the Blue Cross policy provide:

### VII.  TERMINATION

\*    \*    \*    \*    \*    \*

B.  Failure of a Group Sponsor or member to pay or remit dues or service charges when due or within the grace period shall automatically terminate this Certificate without notice as of the date originally due.

\*    \*    \*    \*    \*    \*

D.  If the member fails to remain qualified for membership in or affiliated with an accepted group through which his dues and service charges are paid or remitted to BCHS, his membership shall terminate automatically at the end of the period for which payment of dues has been made. (For conversion privilege of such member, see Article VIII.A.)

\*    \*    \*    \*    \*    \*

### VIII.  CONVERSION PRIVILEGE

A.  If a participant ceases to be covered hereunder pursuant to provisions of Article VII.C. D or E., the member or appropriate dependent may within thirty (30) days after such termination of coverage, apply for membership in BCHS and pay the dues for a classification of membership and

benefits for which the applicant is then eligible under BCHS enrollment regulations. Membership for such new member and his dependents, if any, shall be continuous from the time of the original service date of the terminated coverage, except for maternity care which is subject to a nine (9) months waiting period from the service date of a Family Plan Membership.

\* \* \* \* \* \*

The Blue Shield policy contains similar provisions:

VIII. AGREEMENT DURATION, RE-NEWAL AND CANCELLATION.

\* \* \* \* \* \*

B. Non-payment within the grace period (20 days or 31 days) of the amount due on any payment date shall be deemed a breach of and shall automatically terminate this Agreement without notice or demand.

\* \* \* \* \* \*

IX. MEMBER'S CHANGE OF STATUS.

\* \* \* \* \* \*

B. CHANGE FROM GROUP MEMBERSHIP. Any member enrolled in a group who shall leave that employed or accepted group and who shall thereafter have no group affiliation acceptable to MMS may retain membership by paying directly to MMS the dues or service charges, as determined by the Board of Trustees of MMS as being in form for the type of membership for which the member is then eligible.

\* \* \* \* \* \*

The foregoing clearly provides that the right to benefits for medical services does not extend beyond the life of the contract. Continued membership is necessary to the contract's life and is required in order to receive continued benefits. No other provi-

sions are inconsistent with those set out above.

Because both certificates are unambiguous and preclude recovery by appellant, the judgment is affirmed.

All concur.