STATE ex rel. Gayle VINCENT, et al., Relators,

v.

Honorable Nancy SCHNEIDER, Judge, Eleventh Judicial Circuit, Respondent.

No. SC 87203.

Supreme Court of Missouri, En Banc.

June 30, 2006.

David C. Knieriem, Clayton, for relators.

Steven M. Cockriel, St. Louis, for respondent.

James B. Deutsch, Jane A. Smith, Jefferson City, for Amicus Curiae Home Builders Association of Greater St. Louis.

**Original Proceeding in Mandamus**

WILLIAM RAY PRICE, JR., Judge.

**I**

Relators seek to direct the trial court (Respondent) to deny defendant's motion to compel arbitration. Portions of the arbitration provision are unconscionable and unenforceable, but the case may proceed, consistent with this opinion, after the trial court selects an arbitrator.

**II**

Relators, plaintiffs below, were purchasers of single family homes from defendant, McBride & Son Homes, Inc. (McBride). Written contracts were executed for each home purchase. Each of McBride's preprinted contracts contained a provision that gives McBride the unilateral right to require any claim by the Relators arising out of the contract or the home to be decided by binding arbitration. Specifically, it provides:

4. It is agreed between the parties that Seller's liability to Purchaser for damages of any breach of this contract (including, without limitation, defects in construction items warranted hereunder or breach of Seller's warranties) shall be

limited to the reasonable cost of repair or replacement of any defective items of labor or material. In the event of any claim by Purchaser against seller arising out of this Contract or the Residence, Seller, at its option, may either:

(a) By written notice to Purchaser, repurchase the Residence . . .; or

(b) By written notice to Purchaser, submit the resolution and determination of such claim by Purchaser against Seller to binding arbitration pursuant to the provisions of the Missouri Uniform Arbitration Act, Mo.Rev.Stat. Ch. 435 (1986), as amended, and/or the Federal Arbitration Act, Title 9 U.S.C. §§ 1 et seq., as amended. The arbitrator shall be selected by the President of the Homebuilders Association of Greater St. Louis. The arbitration shall take place in St. Louis County, Missouri at such place and such dates as directed by the arbitrator. The decision of the arbitrator shall be binding on both parties and enforceable in a court of competent jurisdiction. Purchaser shall be liable to Seller for all court, arbitration and attorney's fees and costs incurred by Seller in enforcing this provision.

Each of the Relators initialed their respective contracts in the margin adjacent to the arbitration provision, acknowledging that they had read, understood, and agreed to the terms.

Subsequently, Relators discovered problems with their homes and filed suit against McBride alleging violations of the Missouri Merchandising Practices Act, fraudulent misrepresentation, breach of the implied warranty of habitability, and breach of fiduciary duty. A letter dated April 19, 2005, from counsel for McBride to Relators notified each Relator that McBride was requiring resolution of their claims by binding arbitration and warned that the contract required payment of all of McBride's costs to enforce the agreement to arbitrate by Relators. The letter also provided counsel for Relators with alternative methods for appointment of the arbitrators to hear their claims because the president of the Homebuilders Association of Greater St. Louis happened to be the president of McBride and was no longer willing to appoint an arbitrator.

McBride then filed a motion to compel arbitration, which was granted by Respondent on September 13, 2005. Respondent found that the contracts were not contracts of adhesion, that there was an agreement to arbitrate, and that the arbitration provisions were not unconscionable. Relators sought a writ of mandamus from this Court to compel respondent to deny McBride's motion to compel arbitration. This Court entered an alternative writ of mandamus.

### III

Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate. *State ex rel. PaineWebber, Inc., v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995). The question of whether or not McBride's motion to compel arbitration should have been granted is one of law, to be decided *de novo. Triarch Industries, Inc., v. Crabtree,* 158 S.W.3d 772, 774 (Mo. banc 2005) (citing *Dunn Industrial Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003) ("An appellate court's review of the arbitrability of a dispute is de novo.")).

### IV

First, this case poses the question of whether this contract is a contract of

adhesion.[1] An arbitration clause in a contract of adhesion is not enforceable, pursuant to section 435.350.[2] Section 435.350 provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except *contracts of insurance and contracts of adhesion*, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. Contracts which warrant new homes against defects in construction and reinsurance contracts are not "contracts of insurance or contracts of adhesion" for purposes of the arbitration provisions of this section.[3]

(emphasis added).

■■■ A contract of adhesion, as opposed to a negotiated contract, is a form contract that is created and imposed by the party with greater bargaining power. *Robin v. Blue Cross Hospital Service, Inc.* 637 S.W.2d 695, 697 (Mo. banc 1982). The "stronger party" has more bargaining power than the "weaker party," often because the "weaker party" is unable to look elsewhere for more attractive contracts. *Id.; see also* Corbin on Contracts, Section 559 (1960). The "stronger party" offers the contract on a "take this or nothing" basis. *See Estrin Construction Co. v. Aetna Casualty & Surety Co.*, 612 S.W.2d 413, 418 (Mo.App.1981). The terms in the contract are imposed on the weaker party and "unexpectedly or unconscionably limit the obligations and liability of the [stronger party]." *Robin*, 637 S.W.2d at 697.

Relators have offered no proof that these were contracts of adhesion. At the hearing before the motion court, McBride's general counsel, Jeff Berger, testified that all of the terms in McBride's contracts were negotiable. Relators' counsel did elicit testimony from Berger that the arbitration provision has never been negotiated. However, this does not prove the negative. This minimal evidence was the extent of Relators' proof that the contracts were contracts of adhesion.

Relators offered no proof that they were unable to look elsewhere for more attractive contracts. Relators offered no proof that *all* St. Louis metropolitan area builders used the same arbitration terms or proof that they were forced to purchase their homes from McBride. Furthermore, there was no "unexpected surprise advantage" for McBride, because each of the Relators signed the contract and initialed the section of the contract providing for arbitration.

Relators cannot simply allege that a pre-printed contract is a contract of adhesion and offer no other proof on the matter. "Because the bulk of contracts signed in this country are [pre-printed,] form con-

---

1. This issue of whether this is an adhesion contract is considered only in the context of the enforceability of the arbitration clause under section 435.350. Accordingly, the United States Supreme Court case *Buckeye Check Cashing, Inc. v. Cardegna*, —— U.S. ——, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), does not apply. This is a challenge to the arbitration clause directly and not to the contract as a whole. *Id.* at 1209 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

2. All statutory references are to RSMo 2000 unless otherwise indicated.

3. McBride argues that these are "contracts which warrant new homes against defects in construction" and are, therefore, not contracts of adhesion. This issue is not reached, because Relators have not offered enough proof to find that these are contracts of adhesion.

tracts ... any rule automatically invalidating [such] contracts would be 'completely unworkable.'" *Swain v. Auto Services, Inc.* 128 S.W.3d 103, 107 (Mo.App.2003) (internal citations omitted). Relators did not prove that the disputed contracts are contracts of adhesion.

## V

The second question posed by this case is whether this arbitration provision was unconscionable. Unconscionability has two aspects: procedural unconscionability and substantive unconscionability. Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself. *See Bracey v. Monsanto Co., Inc.*, 823 S.W.2d 946, 950 (Mo. banc 1992); *see also* Hollis, et al., *Is State Law Looking for Trouble?*, 2003 Journal of Dispute Resolution 463, 487 ("The doctrine of unconscionability gives courts the discretion to invalidate contracts that cause one of the parties to be subject to an absence of meaningful choice and unfairly oppressive terms."). Procedural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process. *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 308 (Mo.App.2005). Substantive unconscionability means an undue harshness in the contract terms. *Id.* Relator's claims in this matter concern issues of substantive unconscionability.

An unconscionable contract or clause of a contract will not be enforced. *Whitney* 173 S.W.3d at 310; *see also Bracey*, 823 S.W.2d at 953. Although section 400.2–302 does not apply directly to this sale of real estate, it is instructive when guiding an analysis of unconscionability; it provides:

If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Relators have alleged three specific issues of unconscionability; each will be addressed in turn.

## A

Relators argue that the arbitration clause is unconscionable because it gives only McBride the right to select arbitration. This argument is the "mutuality of obligations" defense to an attempt to force arbitration. As noted in *Triarch*, courts of other jurisdictions have come to varying conclusions on the validity of such clauses, which allow only one party to seek arbitration. 158 S.W.3d at 774–75. This Court has not addressed this issue in the context of an arbitration clause.

"The majority of courts adhere to the Restatement of Contract's view that mutuality is satisfied if there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one-sided." *State Law*, 2003 Journal of Dispute Resolution at 485–86. This is the clear result from Missouri law considering that "[t]he usual rules and canons of contract interpretation govern the subsistence and validity of an arbitration clause." *Dunn*, 112 S.W.3d at 428. Furthermore, the terms of a contract should be read as a whole. *Id.* Finally, given Missouri's preference for the arbitrability of disputes, *Id.* at 429, a rule of contract construction that would be an exception to the general rules of contract

construction and that would make arbitration less likely should not be erected.

■ This is in agreement with the cases from other jurisdictions that have labeled the "mutuality of obligation" requirement as a dead letter in contract law. *See Harris v. Green Tree Financial Corporation,* 183 F.3d 173 (3d Cir.1999); *Doctor's Associates, Inc. v. Distajo,* 66 F.3d 438 (2nd Cir.1995). The Restatement of Contracts provides that "[i]f the requirement of consideration is met, there is no additional requirement of ... 'mutuality of obligation.'" Restatement (Second) of Contracts, section 79 (1979). "As long as the requirement of consideration is met, mutuality of obligation is present, even if one party is more obligated than the other." *Harris,* 183 F.3d at 181.

There is no reason to create a different mutuality rule in arbitration cases. Both parties to this contract exchanged consideration in this sale of a home. The contract will not be invalidated for lack of mutuality of obligation of the arbitration clause.

### B

■ Relators argue that the arbitration clause is unconscionable because it gives the president of the Home Builder Association of Greater St. Louis, which happens to be the president of McBride, the sole discretion to choose the arbitrator. The arbitration provision states that "The arbitrator *shall be selected by the President of the Homebuilders Association* of Greater St. Louis." (emphasis added).

Even if the president of the Home Builder Association of Greater St. Louis was not also the president of McBride, this portion of the arbitration provision would be unconscionable. It requires that an individual in a position of bias be the sole selector of an arbitrator, who must be unbiased. This portion of the arbitration provision can be remedied by turning to section 435.360. Section 435.360 provides:

> If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

This statute fully addresses this issue of unconscionability.

The method of appointment of an arbitrator in the agreement has failed. Section 435.360 provides that the trial court shall appoint an arbitrator. This arbitrator will be vested with all of the powers originally granted by the arbitration provision.

### C

■ Relators also argue that the arbitration clause is unconscionable because it places all costs of the arbitration on Relators. The sentence in the arbitration clause concerning costs states that "[p]urchaser shall be liable to Seller for all court, arbitration and attorney's fees and costs incurred by Seller in enforcing this provision."

■ "The usual rules and canons of contract interpretation govern the subsistence and validity of an arbitration clause." *Dunn,* 112 S.W.3d at 428. An essential principle of contract interpretation is to ascertain the intent of the parties. *Id.* "The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Id.; see also Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15,

21 (Mo. Banc 1995). It is also important to note that a contract is only ambiguous, and in need of a court's interpretation, if its terms are susceptible to honest and fair differences. *Dunn*, 112 S.W.3d at 428–29. "A contract is not ambiguous merely because the parties disagree as to its construction." *Id.* If the language of a contract is unambiguous, the intent of the parties will be gathered solely from the terms in the contract. *Id.* at 429. Furthermore, "each term of a contract is construed to avoid rendering other terms meaningless." *Id.* at 428.

The sentence dealing with fees and costs is strangely worded. McBride points to the language of "costs incurred by Seller in enforcing this provision" as a relatively standard provision that merely provides it with its costs in compelling arbitration. The inclusion of the term "arbitration," however, evidences a broader intended reach. It cannot be reasonably argued that the parties contracted to arbitrate to compel arbitration. Neither can the term "arbitration" be ignored as mere surplusage.[4]

The term "arbitration" in this sentence is rendered meaningless by McBride's interpretation. The "plain and simple meaning" of the term "arbitration" in this sentence is an attempt to charge Relators for all of the "fees" incurred by McBride in the course of arbitration, if McBride decides that it would like to arbitrate the claims being brought against it by a purchaser.

In *Whitney*, 173 S.W.3d at 300, an arbitration provision was invalidated as substantively unconscionable, partly because it contained a clause that stated "[e]ach party will bear the cost of preparing and prosecuting its case" before the arbitrator. This wording attempted to deprive the purchasers of many consumer rights under Missouri law, particularly section 407.025, which allowed a prevailing party to recover attorneys' fees. *Id.* at 309. McBride attempts to take this one step further: McBride wants to be able to select arbitration for any disputes with purchasers and *then* force the purchasers to pay for "all ... arbitration ... fees."

In *Whitney*, it was also argued that "the provision requiring the consumer to bear the costs of arbitration, effectively grants Alltel immunity from claims ... where hundreds of dollars are not involved." *Id.* at 311. The court agreed that because the costs of arbitration would far exceed any possible liability on the claims, "the costs would be so prohibitively expensive as to preclude, for all practical purposes, an aggrieved party from seeking redress for a violation of the Merchandising Practices Act." *Id.* at 313–14. McBride has attempted to erect the same sort of insulation from claims. Now, however, a purchaser of a McBride home would need to have a claim against McBride that would surpass the cost of both parties' arbitration expenses.

It is unconscionable to have a provision in an arbitration clause that puts all fees for arbitration on the consumer. This is particularly true when the cost-shifting terms could work to grant one party immunity from legitimate claims on the contract. At the time this contract was created the arbitration provision that shifts all

---

**4.** The sentence is also confusing because of the use of the two "and[s]" and the terms "fees" and "costs." The sentence could be parsed as "[p]urchaser shall be liable to Seller *for all court, arbitration and attorney's fees* and *costs incurred by Seller in enforcing this provision*," or it could be parsed as "[p]urchaser shall be liable to Seller for all court, arbitration and attorney's *fees and costs* incurred by Seller in enforcing this provision." (emphasis added).

arbitration fees to Relators was unconscionable and unenforceable.[5]

The cost-shifting provision of the arbitration clause should not be enforced. Section 435.395 provides that "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."

### D

██ McBride attempted to soften the unconscionable portions of the arbitration clause in a letter to Relators. The letter offered several methods to choose a different arbitrator and also asked Relators to "[p]lease note that the Contract requires payment of all of McBride's costs to enforce the agreement to arbitrate." McBride argues that these new arbitrator selection proposals cure any impropriety of the original arbitration provision. McBride also argues that the reminder about the cost shifting provision of the contract shows that the only costs they desired to shift to Relators were the costs to force arbitration.

Section 400.2–302 [6] provides that a contract, or provision of a contract, is unconscionable if its terms are unconscionable *at the time it was made. Mason v. Mason,* 873 S.W.2d 631, 635 (Mo.App.1994). Whether McBride's letter is viewed as a unilateral attempt to modify the arbitration clause, or in terms of a settlement proposal regarding the arbitrator selection clause and the cost shifting provisions of

the arbitration clause, is irrelevant. The arbitration clause is viewed at the time it was made.

### VI

The process of selection of an arbitrator in the contract is unconscionable. An arbitrator should be selected by the trial court, pursuant to section 435.360. The cost-shifting term of the arbitration provision of the underlying contract is unconscionable and therefore unenforceable. Costs of the arbitration will be allocated pursuant to section 435.395. The rest of the arbitration provision is enforceable; the preliminary writ of mandamus ordering Respondent to deny McBride's motion to compel arbitration is quashed and the case shall proceed consistent with this opinion.

WOLFF, C.J., RUSSELL and WHITE, JJ., concur.

STITH, J., concurs in separate opinion filed.

TEITELMAN, J., concurs in opinion of STITH, J.

LIMBAUGH, J., concurs in result in separate opinion filed.

LAURA DENVIR STITH, Judge, concurring.

I concur with the principal opinion insofar as it invalidates the provisions permitting McBride to select an arbitrator and shift costs of arbitration in an unconscionable manner. Because relators did not mention the non-enforceability of a non-mutual arbitration clause in their Points

---

5. Also note that section 400.2–302 provides that a "court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

6. This section does not control a sale of real estate, but does offer guidance for this scenario.

Relied On and the argument section of their brief contained only a short paragraph discussion of it, however, I disagree with the principal opinion's decision to reach that issue.

While, as the principal opinion notes, a number of courts have said that mutuality of the right to choose arbitration is not necessary, many other courts have held to the contrary. *See Triarch Indus., Inc., v. Crabtree,* 158 S.W.3d 772, 774–75 (Mo. banc 2005) ("many state courts, and federal courts applying state law, have invalidated similar non-mutual arbitration provisions because they are so one-sided as to be illusory or unconscionable and, therefore, are unenforceable under applicable state law"); Robert Hollis et al., *Is State Law Looking for Trouble? The Federal Arbitration Act Flexes its Preemptive Muscle,* 2003 J. Disp. Resol. 463, 483–89. *See also Showmethemoney Check Cashers, Inc. v. Williams,* 342 Ark. 112, 27 S.W.3d 361, 366–67 (2000) (agreement lacked mutuality of obligation where consumer was bound by arbitration in every aspect, yet company could "proceed immediately to court to collect amounts due it"); *Taylor v. Butler,* 142 S.W.3d 277, 286–87 (Tenn.2004) (contract held to be unconscionable and void because one party had to submit all claims to arbitration, but the other reserved a right to a judicial forum); *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1172–73 (9th Cir.2003) (arbitration clause failed because employer had "unilateral power to modify or terminate" it).[1]

Unfortunately, the briefing does not discuss these cases or give this Court adequate guidance as to whether the mere fact some consideration was given for the contract generally is sufficient to support enforcing a non-mutual arbitration provision in light of the complete bar the provision places on the one party's access to the courts while giving the other party an unfettered choice whether to litigate in court or before an arbitrator. *Cf. Robin v. Blue Cross Hosp. Serv.,* 637 S.W.2d 695, 697 (Mo. banc 1982) (terms unenforceable that "unexpectedly or unconscionably limit the obligations and liability of the drafting party"); *Whitney v. Alltel Communications, Inc.,* 173 S.W.3d 300, 313 (Mo.App. W.D.2005) (limitation on filing class action unconscionable where "the expense of pursuing" a claim "far exceed[s] the amount in controversy").

For these reasons, I would not reach the merits of the mutuality issue. I concur in the remainder of the opinion.

STEPHEN N. LIMBAUGH, JR., Judge, concurring.

I concur that the writ should be quashed, but I write separately to suggest that the issues presented have been mooted by the defendant McBride's concessions.

I agree that the arbitration clause was unconscionable to the extent it provided that "[t]he arbitrator shall be selected by the President of the Homebuilders Association of Greater St. Louis" and that at the time the lawsuit was filed (though no longer) the president of the Homebuilders Association was also the president of McBride. But from the time relators first opposed McBride's effort to invoke arbitration, McBride has continually acknowledged in its communications with relators, in its brief, and in oral argument to this

---

1. *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002) (where one party bears the "unfettered right to alter the arbitration agreement's existence or its scope" the agreement is illusory); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 315–16 (6th Cir. 2000) (refusing to enforce one-sided arbitration clause under state law because employees received no consideration for their agreement to arbitrate).

Court that some other arbitrator should be appointed. Indeed, McBride stated to relators and to the Court that "[w]e can request the trial court to appoint an arbitrator for us," which is the procedure specified in sec. 435.360 and the very remedy the majority now imposes.

With regard to the purported cost-shifting provisions, McBride maintains, and I agree, that the proper interpretation of the provision is simply that relators are bound to pay the costs incurred by McBride in enforcing its contractual right to arbitrate the dispute, not that relators are bound to pay the cost of the arbitration proceedings altogether. Of course, had the cost-shifting provision actually said that relators are bound to pay all the costs of the arbitration proceedings, then I would agree that the provision was unconscionable. But that is not the case because McBride has expressly stated that it is not entitled to those costs and that it is not claiming those costs.

Given these concessions, the issues are moot, there are no justiciable claims and the majority's analysis is unnecessary and unwarranted.