

# SUPREME COURT OF MISSOURI
## en banc

BRIDGECREST ACCEPTANCE
CORPORATION,

    Appellant,

v.

KELLY DONALDSON AND
ROBERT HAULCY,

Respondents.

and

BRIDGECREST ACCEPTANCE
CORPORATION,

    Appellant,

v.

CHRISTOPHER JONES,

Respondent.

*Opinion issued July 12, 2022, and modified
on the Court's own motion August 30, 2022*

No. SC99269

No. SC99270

### APPEALS FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Mondonna L. Ghasedi, Judge

In two separate cases, Bridgecrest Acceptance Corporation sought a deficiency

judgment in circuit court against consumers who had defaulted on car payments. In both

cases, the consumers brought counterclaims against Bridgecrest, alleging unlawful and deceptive business practices. Bridgecrest moved to dismiss or stay the consumers' counterclaims and compel the matters to arbitration pursuant to an arbitration agreement the consumers signed. The circuit court overruled Bridgecrest's motions. On appeal, this Court reverses the circuit court's rulings and finds the arbitration agreement legally valid, conscionable, and not precluded by collateral estoppel. These cases are remanded for further proceedings consistent with this opinion.

### Factual and Procedural Background

The facts of both cases are virtually identical. In 2017, Kelly Donaldson and Robert Haulcy together and Christopher Jones individually (collectively, "Consumers") entered into an installment contract with DriveTime Car Sales Company, LLC, to finance and buy a vehicle. Each also signed an accompanying arbitration agreement with DriveTime.[1] The installment contract referenced the arbitration agreement, stating the arbitration agreement was "incorporated by reference into and is a part of this Contract." The arbitration agreement also referenced the installment contract, stating the arbitration agreement was "part of, and is hereby incorporated into" the installment contract. Thereafter, DriveTime assigned its interests as to both installment contracts—including the attached arbitration agreements—and vehicles to Bridgecrest Acceptance Corporation.[2]

---

[1] Because both installment contracts and arbitration agreements in these cases contained the same language and were the same in all relevant respects, this opinion hereinafter refers to both simultaneously and interchangeably.

[2] Hereinafter Bridgecrest and DriveTime are referred to as "Bridgecrest" for convenience.

The arbitration agreement identified various claims subject to arbitration, including any dispute or controversy related to:

(a) The Contract.
(b) The vehicle or the sale of the vehicle.
(c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
(d) The relationships resulting from the Contract.
(e) Advertisements, promotions or oral or written statements related to the Contract.
(f) The financing terms.
(g) Your credit application.
(h) The origination and servicing of the Contract.
(i) The collection of amounts you owe us.
(j) Any repossession, or replevin, of the vehicle.
(k) Your personal information[.]
(l) The rescission or termination of the Contract.

In explaining its scope, the arbitration agreement provided:

"Claim" has the broadest reasonable meaning. It includes claims of every kind and nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about the validity, enforceability, coverage or scope of this Agreement.[3]

. . . .

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from

---

[3] The arbitration agreement excludes from the definition of "Claim" those disputes concerning the validity, enforceability, coverage, or scope of the arbitration agreement and is otherwise silent as to the arbitrability of contract formation issues. Consumers "cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit.'" *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017) (internal quotation omitted). This Court, rather than an arbitrator, accordingly reviews a challenge to contract formation. Neither party disputes this issue on appeal.

3

using such self-help remedy and that does not involve a request for damages or monetary relief of any kind.

Finally, the arbitration agreement contained an anti-waiver provision stating:

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

After Consumers failed to make the required payments for the vehicles, Bridgecrest repossessed and sold the vehicles. Following the sale of both vehicles, Bridgecrest sought to recover the debt remaining on both installment contracts.

Bridgecrest filed suits in circuit court seeking to collect the outstanding sums. Consumers asserted counterclaims, raising putative class claims against Bridgecrest for unlawful and deceptive business practices in violation of the Uniform Commercial Code. Bridgecrest moved to dismiss or stay Consumers' counterclaims and compel arbitration pursuant to the arbitration agreements. The circuit court overruled Bridgecrest's motions in both cases. Bridgecrest appealed the circuit court's rulings; the court of appeals affirmed. This Court transferred these cases pursuant to article V, section 10 of the Missouri Constitution and disposes of both in this opinion.

**Analysis**

On appeal, Bridgecrest challenges the overrulings of its motions to compel arbitration, arguing the arbitration agreement is a legally valid and enforceable contract. In addition to responding to Bridgecrest's legal arguments, Consumers contend Bridgecrest failed to prove the existence of an arbitration agreement between Bridgecrest and Consumers. Although Bridgecrest attached the signed arbitration agreements to its

4

motions to compel arbitration, Bridgecrest did not authenticate or introduce the agreements at an evidentiary hearing; therefore, Consumers allege Bridgecrest did not factually prove the existence of the arbitration agreement.

Consumers' argument is unavailing because Consumers never contested the existence of the arbitration agreement in circuit court. Section 435.355 governs the procedure applicable when a party files a motion to compel arbitration.[4] That provision instructs that, if the party opposing the motion to compel arbitration "denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied." § 435.355.1. In such a case, the circuit court must conduct an evidentiary hearing to determine whether an arbitration agreement exists. § 435.355.1-3; *see also Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 351-52 (Mo. banc 2006). Consumers, however, conceded the existence of an arbitration agreement in circuit court and opposed the motions to compel for "purely legal" reasons, rather than factual ones. In fact, in both cases, Consumers represented to the circuit court, "The only relevant facts are the contents within the purported Arbitration Agreement." Consumers never denied the existence of the arbitration agreements and argued they were invalid, unconscionable, and Bridgecrest was legally estopped from enforcing them. Accordingly, this Court reviews those purely legal issues raised in connection with Bridgecrest's motions to compel. *Ingram v. Brook Chateau*, 586 S.W.3d 772, 774 (Mo. banc 2019).

---

[4] All Missouri statutory citations are to RSMo 2016.

5

When the parties have not contested the factual existence of an arbitration agreement, the overruling of a motion to compel arbitration is reviewed *de novo*. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018). "'An appellate court's review of the arbitrability of a dispute is *de novo*' because '[w]hether a dispute is covered by an arbitration provision is relegated to the courts as a question of law.'" *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020) (alteration in original) (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc. 2003)).

Turning to the purely legal challenges Consumers raised in circuit court, Bridgecrest posits the circuit court erred in overruling its motions to compel arbitration because (1) the arbitration agreement contained adequate consideration and (2) was conscionable, and (3) Bridgecrest was not collaterally estopped from enforcing the arbitration agreement. This Court addresses each argument in turn.

Missouri contract law governs whether an arbitration agreement is valid and enforceable. *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015); *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014); *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006). Generally applicable contract defenses, such as unconscionability and lack of consideration, apply to arbitration agreements. *Baker*, 450 S.W.3d at 774; *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 513 (Mo. banc 2012). In response to Bridgecrest's motions to compel arbitration, Consumers claimed either no valid agreement to arbitrate exists due to a lack of consideration, or, if an agreement exists, it is unconscionable.

6

## I. The Arbitration Agreement Contained Adequate Consideration

Bridgecrest claims the circuit court erred in overruling its motions to compel arbitration to the extent it relied on Consumers' arguments that the agreement lacked adequate consideration. Bridgecrest maintains the consideration supporting the installment contract provided the consideration for the arbitration agreement. In the alternative, Bridgecrest argues the arbitration agreement, standing alone, contained sufficient consideration. Bridgecrest's first argument is dispositive.

As a preliminary matter, this Court observes the retail installment contract and the arbitration agreement were part of a singular contract. "In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba." *City of Sugar Creek*, 112 S.W.3d at 435 n.5. This is true as long as the intent to incorporate is clear and the incorporating contract makes a plain, explicit reference to and adequately identifies the incorporated document. *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810-11 (Mo. banc 2015).

The incorporation provisions in the installment contract and arbitration agreement demonstrate the arbitration agreement and the installment contract together formed a single, integrated contract. The installment contract referenced the arbitration agreement and stated it was "incorporated by reference into and is a part of" the contract. The arbitration agreement also referenced the installment contract and stated it was "part of, and is hereby incorporated into" the contract. These plain and explicit references evince

7

the parties' intent to incorporate the two agreements into one contract. *Id.*[5]

The three essential elements of a valid contract are offer, acceptance, and bargained for consideration. *Baker*, 450 S.W.3d at 774. "Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Soars*, 563 S.W.3d at 118 (Draper, J., dissenting) (internal quotation omitted). It is well-established law that courts evaluate the contract "as a whole to determine whether consideration is adequate rather than looking solely at the consideration given for the agreement to arbitrate." *Eaton*, 461 S.W.3d at 429; *see also State ex rel. Reg'l Convention v. Burton*, 533 S.W.3d 223, 226 n.2 (Mo. banc 2017) (noting: "Additional consideration for an arbitration clause is unnecessary as long as the contract as a whole meets the consideration requirement." (internal quotation omitted)); *see also State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. banc 2006) ("[M]utuality is satisfied if

---

[5] Even in the absence of explicit incorporation, "contemporaneously signed documents relating to one subject matter or transaction are construed together" except when "the realities of the situation indicate that the parties did not so intend." *Johnson ex rel. Johnson v. JF Enters, LLC*, 400 S.W.3d 763, 767-68 (Mo. banc 2013) (internal quotation omitted).; *see also Four-Three-O-Six Duncan Corp. v. Sec. Tr. Co.*, 372 S.W.2d 16, 23 (Mo. 1963) (holding contemporaneously executed documents relating to the same subject matter constitute a single contract when, at minimum, a reasonable basis exists for inferring this was the parties' intent). Consumers do not refute Bridgecrest's claim that they executed the arbitration agreement and installment contract contemporaneously, conceding both were signed "around the same time" on the same day in each case. The arbitration agreement and installment contract relate to the same subject matter in that both concern a single transaction—Consumers' purchase of a vehicle—and the rights and duties flowing from that transaction. These details, along with the express language of incorporation in both documents, evince a clear intent that the two documents be considered "incorporated into" and "a part of" the same contract. *See City of Sugar Creek*, 112 S.W.3d at 435 n.5; *see also JF Enters.*, 400 S.W.3d at 767-68.

there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one-sided."). Consequently, if the consideration given in exchange for the installment contract was adequate, it likewise supported the arbitration agreement.[6]

Consumers do not contest the adequacy of the consideration supporting the installment contract, nor could they. Bridgecrest supplied Consumers with a vehicle and provided them with financing in exchange for Consumers' promises to pay, as well as several other promises, including the promise to arbitrate several claims. The installment contract—including the arbitration agreement—also met the requirement of mutuality, or the requirement that each party to a contract be bound by taking on some obligation in consideration of an act or promise. *Eaton*, 461 S.W.3d at 433. Because "mutuality is satisfied if there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one-sided[,]" adequate consideration existed to support the arbitration agreement. *Vincent*, 194 S.W.3d at 858.

Relying on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2006), and *Ellis v. JF Enterprises, LLC*, 482 S.W.3d 417 (Mo. banc 2016), Consumers contend the

---

[6] At least one case appears to contradict this rule. In *Caldwell v. UniFirst Corp.*, 620 S.W.3d 236, 238 (Mo. App. 2020), two parties signed an employment agreement containing an embedded arbitration clause. Relying on the "contract principle of severability," the court of appeals seemingly condoned an arbitrator's finding that the embedded arbitration clause was a separate contract from the overall agreement that required its own consideration. *Id.* at 242. Absent a finding that the overall contract is defective, valid arbitration agreements incorporated or embedded into a larger contract do not require separate consideration. To the extent *Caldwell* suggests otherwise, such reasoning should no longer be followed.

arbitration agreement alone must be supported by adequate consideration. The FAA governs arbitration agreements in all contracts involving interstate commerce, *see* 9 U.S.C. §§ 1- 2, and the arbitration agreement in these cases specifically provides the FAA controls. Consumers argue the FAA dictates arbitration agreements are "severable" and need their own distinct consideration because, according to *Ellis*, arbitration agreements and clauses "are to be considered separate and apart from any underlying or contemporaneous related agreements." 482 S.W.3d at 419.

Consumers misconstrue *Ellis* and the several United States Supreme Court cases interpreting the FAA. Severability means "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). When another aspect of the larger contract is faulty, an embedded or incorporated agreement to arbitrate may be considered "separate and apart" from the rest of the contract and may still be enforceable under the FAA even when another aspect of the larger contract is not. *Ellis*, 482 S.W.3d at 419-20.[7] But this rule is irrelevant when a party challenges the embedded arbitration agreement itself, rather than the viability of the larger contract. Were this Court

---

[7] If the entire underlying contract is deemed invalid but the arbitration agreement is preserved and severed from the contract pursuant to the FAA, the underlying contract can no longer supply the arbitration agreement with consideration. *See Ellis*, 482 S.W.3d at 420 (noting "the FAA does not say that all purported arbitration agreements necessarily are enforceable" but does provide "that such agreements are enforceable unless the arbitration agreement itself—in isolation—is invalid under generally applicable state law principles"). Absent severance, however, Consumers offer no explanation for why an arbitration agreement would need consideration separate and apart from the consideration supporting the entire contract.

to accept Consumers' argument and find an arbitration clause or agreement forming a part of a larger contract needed separate consideration, it would contravene the often-repeated mandate that agreements to arbitrate must be governed by the same rules as apply generally in contract law. *See* 9 U.S.C § 2; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Kerr*, 461 S.W.3d at 807-08. Specifically, such a holding would violate the black letter law that a court cannot go line by line ensuring each promise is counterbalanced. *See Baker*, 450 S.W.3d at 783 ("[T]here does not have to be separate consideration for each promise when a collection of promises is given in exchange for a collection of promises.").[8] For these reasons, the arbitration agreement was supported by adequate consideration.

## II. The Arbitration Agreement Is Conscionable under Missouri Law

For similar reasons, Bridgecrest's second argument is also meritorious. The arbitration agreement is conscionable under Missouri law, and the circuit court erred in overruling the motions to compel arbitration to the extent it found the agreement unconscionable. "Unconscionability is one of the common law contract defenses" that

---

[8] Consumers also contend that, while this Court has found the consideration supporting the entire contract may likewise support an arbitration agreement, those cases concern and are limited to challenges based on conscionability, rather than challenges based on the mutuality of obligations or promises. But this Court has already applied such law outside the context of conscionability. *See Burton*, 533 S.W.3d at 226 n.2. *Burton* primarily assessed the scope of an arbitration agreement, but also at issue was whether a lease contract could supply consideration for an arbitration agreement attached to the contract and referenced by an arbitration clause embedded in the lease contract. *Id.* This Court dismissed the argument that the arbitration agreement lacked consideration, holding the overall contract provided sufficient consideration for the agreement for the express reason that "[a]dditional consideration for an arbitration clause is unnecessary as long as the contract as a whole meets the consideration requirement." *Id.* (internal quotation omitted).

11

Missouri courts may apply "in determining whether an arbitration clause is valid." *Eaton*, 461 S.W.3d at 432. Unconscionability is a defense to contract formation and protects contracting parties from "one-sided contracts, oppression and unfair surprise." *Brewer v. Mo. Title Loans*, 364 S.W.3d 486, 493 (Mo. banc 2012).

The conscionability arguments here center on the terms of the arbitration agreement itself. Consumers contend the arbitration agreement is unconscionable because it is one-sided or lacks mutuality and makes illusory promises that enable Bridgecrest to unilaterally divest itself of an obligation to perform under the agreement. Consumers claim the arbitration agreement lacks mutuality or is one-sided and unduly harsh to Consumers because it does not equally obligate Bridgecrest. Consumers claim this divestment of obligation creates the illusion of a promise. Specifically, Consumers contend the anti-waiver provision in the agreement allows Bridgecrest to initiate litigation in circuit court and engage in self-help repossession without waiving Bridgecrest's right to compel arbitration on other claims.

Despite Consumers' arguments to the contrary, the self-help and anti-waiver provisions of the arbitration agreement neither render the agreement one-sided nor "unilaterally divest" Bridgecrest of the agreement to arbitrate. One-sidedness or lack of mutuality can make a contract unenforceable when its terms are "unduly harsh." *Brewer*, 364 S.W.3d at 489 n.1. This "fact-specific inquiry" focuses on whether the terms "are so one-sided as to oppress or unfairly surprise an innocent party or which reflect an overall imbalance in the rights and obligations imposed by the contract at issue." *Id.* A contract otherwise supported by mutual promises that contains a one-sided agreement to arbitrate

12

may not be so one-sided as to poison the larger contract with unconscionability. *Eaton*, 461 S.W.3d at 434. An arbitration agreement that does not create equal obligations for both parties, however, is one of the factors relevant to the conscionability inquiry. *Id.* at 429. A contract can become unconscionable and unenforceable when it ostensibly contains mutual promises but one party retains the unilateral right to modify or alter the contract and thereby divest itself of its obligation to uphold its side of the bargain. *Id.* at 433-36. Such promises are illusory and inhibit contract formation. *Id.*

In *Eaton*, this Court found an arbitration agreement to be one-sided. *Id.* at 434. This Court ultimately upheld the agreement but did so only after severing an anti-waiver provision that would have divested one party of an agreed upon promise and rendered the contract unconscionable. *Id.* at 437. The agreement in *Eaton* was one-sided because it gave the home manufacturer the unilateral right to compel the homebuyer to arbitrate *all* claims but permitted the manufacturer to avoid arbitration for any dispute arising from the manufacturer's three primary claims: "to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement." *Id.* at 434. The buyer alleged the consequence of exempting the manufacturer's three primary claims from arbitration was that the manufacturer, in effect, could circumvent arbitration altogether because such claims "are the only types of claims [the manufacturer] would ever sue on." *Id.* at 433. This Court found the arbitration agreement unconscionable because an anti-waiver provision in the arbitration clause permitted the manufacturer to sue the buyer for any of those three primary claims without waiving the manufacturer's right to compel arbitration "regarding any other dispute or remedy subject to arbitration in this contract, *including the*

13

*filing of a counterclaim in a suit brought by* [*the manufacturer*[.]" *Id.* at 430 (emphasis added). The contract, therefore, "could create the anomalous situation where [the buyer's] affirmative defenses and counterclaims to claims made by [the manufacturer] in court must proceed in arbitration at the same time as [the manufacturer] proceeds on those same claims in court." *Id.* at 434. The one-sidedness of the arbitration agreement and the anti-waiver provision together enabled the manufacturer to effectively divest itself of its promise to arbitrate. *Id.* at 436. This Court cured the contract of unconscionability by severing the anti-waiver provision. *Id.* at 436-37.

While Consumers similarly claim the embedded arbitration agreement is one-sided and the anti-waiver provision authorizes Bridgecrest to "unilaterally divest" itself of its agreement to arbitrate, *Eaton* is distinguishable. Even assuming repossession is Bridgecrest's primary remedy, excluding self-help from arbitration does not render the agreement one-sided. In *Eaton*, the homebuyer was altogether unable to contest the home manufacturer's three primary claims in litigation. *Id.* at 436. In contrast, Consumers retained the right to contest Bridgecrest's exercise of self-help in court with injunctive relief and were not wholly constrained to contesting self-help via arbitration.[9] The

---

[9] For the same reasons, Consumers find no support in *Motormax Financial Services Corp. v. Knight*, 474 S.W.3d 164, 170-71 (Mo. App. 2015), *abrogated on other grounds by Sanford v. CenturyTel of Missouri, LLC*, 490 S.W.3d 717 (Mo. banc 2016). There too the arbitration agreement contained a provision excepting self-help and any "*actions…to collect any debt owed* by the Consumer [and] to enforce the provisions of the security agreement securing such debt." *Id.* at 170. As in *Eaton*, what ultimately rendered the agreement unconscionable in *Motormax* was the fact that

> "Motormax retained the right to pursue its claims against Mr. Knight in court, while he was required to resolve any claims against Motormax solely through arbitration, including the assertion of any defenses. This could potentially

14

arbitration agreement, therefore, does not exempt Bridgecrest's claims from arbitration while compelling Consumers to arbitrate its relevant accompanying defenses, affirmative defenses, and counterclaims. Bridgecrest cannot litigate any claim while forcing Consumers to respond to such claims in arbitration.[10] Both Bridgecrest and Consumers may compel arbitration on any claim the agreement encompasses. The agreement does not, therefore, create the "anomalous situation" that signified unconscionability in *Eaton* and prompted this Court to sever the anti-waiver provision. Accordingly, the arbitration agreement does not allow Bridgecrest to unilaterally divest itself of its obligation to arbitrate and does not infect the agreement with unconscionability.

Consumers further attempt to liken these facts to *Greene v. Alliance Automotive, Inc.*, 435 S.W.3d 646 (Mo. App. 2014), but that comparison fails for similar reasons. In *Greene*, an arbitration agreement between a car buyer and a seller (1) covered "any dispute" arising out of the contract related to the purchase and sale or financing of the vehicle, or any resulting transaction, (2) contained a self-help provision, and (3) stated that "[n]o party waives the right to elect arbitration ... by exercising self-help remedies." *Id.* at 652; *see also Eaton*, 461 S.W.3d at 435-36 (discussing *Greene* in depth). The self-help provision provided repossession would be used only "pending final determination of the Dispute by the arbitrator[.]" *Greene*, 435 S.W.3d at 652. When the buyer defaulted, without submitting the issue to arbitration, the seller exercised self-help repossession. *Id*. at 653.

---

force Mr. Knight to proceed on the same issue in two separate forums, risking inconsistent results[.]" *Id.* at 171.

[10] As Bridgecrest notes, Consumers could have compelled arbitration on the deficiency claims Bridgecrest brought against Consumers.

15

The buyer then sued in court to contest repossession, prompting the seller to move to compel arbitration. *Id.* at 652-53. In *Greene*, the arbitration agreement contained an illusory promise divesting the dealer of an obligation to arbitrate in that, *even if the dealer reneged on its promise to submit self-help to arbitration before exercising this remedy*, the anti-waiver provision provided the exercise of self-help would not waive the dealer's right to compel the arbitration of other claims. *Id.* at 652-54; *see also Eaton*, 461 S.W.3d at 435 (noting "the dealer [in *Greene*] could foreclose the buyer's right to review of the provisional repossession simply by failing to file for arbitration").

The *Greene* court noted:

> [The seller] apparently interprets the agreement in this manner as it solved its own dispute with [the purchaser] by repossessing her vehicle, but now relies on the express language of the arbitration agreement to compel [the purchaser] to arbitrate her claims.

*Id.* at 654. In the present case, there was no comparable divestment of any obligation that destroyed mutuality. The mere fact that the arbitration agreement excludes self-help—or any "primary claim"—from arbitration altogether *does not* result in automatic divestment and unconscionability. In *Eaton*, this Court observed:

> To hold that the agreement is unconscionable solely due to lack of mutuality because [the home manufacturer], but not [the homebuyer], is given the option of litigating the issues most important to it in court is inconsistent with the principles set out in *Vincent*. "The consideration of a contract can consist either in a benefit conferred upon the promisor or in a legal detriment to the promisee, which means that the promisee changes his legal position ...." *State ex rel. Kansas City v. State Highway Comm'n*, 349 Mo. 865, 163 S.W.2d 948, 953 (1942). Both parties exchanged consideration for the entire contract: [the home buyer] paid the purchase price and [the manufacturer] provided [the buyer] with the home. [The homebuyer's] mutuality argument, which is based on the fact that [the manufacturer] can choose to bring some matters in court whereas [the buyer] cannot do so, does not persuade this

16

Court to overrule *Vincent*. The lack of mutuality as to the arbitration agreement does not itself invalidate that arbitration agreement.

*Eaton*, 461 S.W.3d at 434. Here, there is no outright divestment of the agreement to arbitrate owning to an illusory promise—as in *Greene*—nor was there one-sidedness tantamount to divesting a party of the obligation to arbitrate—as in *Eaton*. Consequently, the anti-waiver and self-help provisions do not render the arbitration agreement unconscionable.

Because Bridgecrest's obligations and promises are not illusory and constituted real consideration, the agreement is conscionable and enforceable. Consumers' remaining arguments contest the adequacy, rather than the existence of, consideration. "Courts have no authority to attempt to value the bargained-for consideration in an effort to determine whether the promisor is—or is not—receiving adequate return for the promise given." *Baker*, 450 S.W.3d at 781 (internal quotation omitted). For these reasons, the arbitration agreement is conscionable and enforceable, and the circuit court erred by overruling Bridgecrest's motions to compel arbitration.

## III.   Bridgecrest's Claims Are Not Barred by Collateral Estoppel

In circuit court, Consumers contended collateral estoppel barred Bridgecrest's requests to compel arbitration. Consumers maintain Bridgecrest is estopped from enforcing the arbitration agreement in both cases because Bridgecrest unsuccessfully sought to invoke the same arbitration agreement in *Haight v. DriveTime Car Sales Company, LLC*, No. WD81164 (Mo. App. May 29, 2018) (unpublished), in which the circuit court and court of appeals determined the arbitration agreement was invalid. This

17

argument lacks merit, however, because Consumers never established one of the elements of collateral estoppel: namely, that "the issue decided in the prior adjudication was *identical* to the issue presented in the present action[.]" *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. banc 1991) (emphasis in original).[11] In *Haight*, an arbiter had previously deemed the underlying installment contract fraudulent and void. Therefore, the circuit court evaluated the arbitration agreement in isolation. Consequently, the focus of the parties' argument was whether there was consideration for the formation of the arbitration agreement.

Here, the installment contract was never deemed invalid by the circuit court or an arbitrator and was capable of providing consideration to support the arbitration agreement. This fact demonstrates the issue presented in *Haight* was remarkably different than those presented here and renders collateral estoppel inapplicable to Bridgecrest's motions to compel arbitration.

---

[11] Collateral estoppel may be applied only when the party seeking to assert the doctrine demonstrates: (1) "the issue decided in the prior adjudication was identical to the issue…in the present action"; (2) "the prior adjudication resulted in a judgment on the merits"; (3) "the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication"; and (4) "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001).

**Conclusion**

This Court finds the circuit court erred in refusing to compel arbitration for the reasons discussed above.  The circuit court's orders overruling Bridgecrest's motions to compel arbitration are reversed, and these cases are remanded for further proceedings consistent with this opinion.[12]

_____

W. Brent Powell, Judge

All concur.

---

[12] After the parties briefed and argued these cases, the Supreme Court of the United States issued *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).  *Morgan* held that, despite the FAA's strong preference for arbitration, courts may not create special rules treating arbitration more favorably than other ordinary contract matters.  *Id.* at 1713.  *Morgan* concerned appellate court holdings that enabled parties to behave as if they did not intend to exercise their right to compel arbitration—by engaging in extensive litigation—without risking a waiver of that right, as long as the opposing party was not prejudiced.  *Id.*  The Supreme Court invalidated these prior court rulings, holding the FAA is intended to "place such agreements upon the same footing as other contracts."  *Id.*  (internal quotation marks omitted).  Consumers argue the circuit court properly overruled Bridgecrest's motions to compel arbitration because, under *Morgan*, Bridgecrest waived its right to compel arbitration by filing a deficiency claim in circuit court.  What Consumers ignore, however, is the anti-waiver provision in their agreements with Bridgecrest.  Consumers specifically agreed, in exchange for mutual consideration, that even if the parties litigate any claim in court, neither party waives the right to arbitrate any other new claim.  Consumers do not argue *Morgan* prohibits anti-waiver provisions but argue it merely reiterates this Court's long-standing holdings that an arbitration agreement must be interpreted like any other contract.  *See*, *e.g.*, *Kerr*, 461 S.W.3d at 807.  The arbitration agreement in these cases contained a valid and enforceable anti-waiver provision clearly providing that a party litigating one claim in court does not waive its right to compel arbitration of any other claims.  For these reasons, Consumers fail to persuade this Court that the Supreme Court's decision in *Morgan* affects the outcome of these cases.