**NORTH CENTRAL COUNTY FIRE ALARM SYSTEM, INC.,**
Plaintiff–Respondent,

v.

**MARYLAND HEIGHTS FIRE PROTECTION DISTRICT,**
Respondent–Appellant.

No. 70565.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 29, 1997.

Uthoff, Graeber, Bobinette & O'Keefe, Kevin M. O'Keefe, Richard B. Blanke, St. Louis, for Appellant.

W. Scott Pollard, Florissant, for Respondent.

KAROHL, Judge.

On May 3, 1971, plaintiff, North Central County Fire Alarm System, Inc., (North Central), and Maryland Heights Fire Protection District, (District), entered into a "contract for dispatching services." North Central is a Missouri not-for-profit corporation. District is a municipal corporation rendering fire protection services in St. Louis County. On September 27, 1994, District canceled the contract effective November 1, 1994. North Central filed a petition for declaratory judgment regarding the rights, status and legal relations of the parties on the terms of the contract defining compensation for dispatching services. It also requested a money judgment in accord with its interpretation of the compensation agreement. Defendant, District, filed an answer and counterclaim. It also asked for a declaratory judgment regarding the compensation agreement and a money judgment in accord with its interpretation of the agreement.

Both parties filed motions for summary judgment relying on the pleadings, affidavits and sworn discovery responses. The trial court entered findings, conclusions and judgment in favor of North Central and against District on North Central's petition and District's counterclaim.

On appeal, District contends it was entitled to summary judgment on its counterclaim on undisputed facts and North Central was not entitled to summary judgment on its petition because "there are genuine issues of material fact" in dispute. We reverse and remand.

The conflicting interpretations which are at issue involve the basis of the consideration for each year of dispatching services. More specifically, the issue is whether the parties agreed that the tax levy enacted each year by District would establish the basis for payment for that year's services or whether the tax levy for one calendar year would establish the basis of payment for the following year.

We review summary judgment as an issue of law. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo because the criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the ruling. *Id.* Summary judgment is particularly appropriate if the issue to be resolved is the construction of a contract that is unambiguous on its face. *Daniels Exp. & Transfer v. GMI Corp.*, 897 S.W.2d 90, 91–92 (Mo. App. E.D.1995). The test for ambiguity is whether disputed language is reasonably susceptible of more than one meaning when the words are given their plain meaning as understood by an average person. *Id.* at 92.

The agreement was effective when it was

executed on May 3, 1971.[1] We find there are at least two relevant ambiguities on the face of the contract. The first involves the amount of money owed by District to North Central for services provided in the calendar year 1971. Paragraphs # 3 and 4 conflict. Paragraph # 3 provides:

> 3. The initial, annual fee to be charged by [North Central] and to be paid by [District] for the first year of this contract shall be
>
> Dollars ($ ), at not to exceed the rate of Five Thousand Dollars ($5,000.00) per year for each active engine-house maintained by [District]. At least fifty percent (50%) of the initial, annual fee shall become due and payable upon execution of this contract, and the remaining portion of said fee within six (6) months thereafter.

Paragraph # 4 sets an amount not to exceed $.03 per $100 of the assessed valuation of all taxable property within the district for "[a]fter the first year of this contract, that is to say, *AS OF* January 1, 19_71,_..." [The emphasized words and figures added in ink.] According to paragraph # 3, District owed $5,000 per firehouse for 1971 services, and according to paragraph # 4, it owed all taxes collected on a levy not to exceed $.03 per $100 of the assessed valuation of all taxable property within the district.

In May of 1971, District enacted a tax levy which was billed by the collector in September or October and was due by December 31, 1971. By statute, District is not entitled to use any part of taxes collected on a levy to support dispatching services except for that purpose. If the contract is interpreted as setting the consideration for 1971 services at $5,000 per firehouse, the amount of taxes collected from the 1971 levy, which apparently was much greater than $5,000, would pay for services provided in 1972. It is possible, but not certain on present summary judgment facts, the parties ignored paragraph # 3, as District paid North Central $19,953.60 in calendar year 1971. Payment in that amount is undisputed and unexplained.

It could not be based on a 1970 levy because there was no 1970 levy. Even if there was a "hypothetical" levy, no taxes would have been collected and collection is the agreed time for payment.

There is also ambiguity in identifying which levy established the basis for a particular year's consideration. The parties did not provide the trial court with facts to support a finding whether the 1971 levy produced the taxes to pay for services in 1971, or, pay for services in 1972. Paragraph # 4 provides in its entirety,

> After the first year of this contract, that is to say, AS OF January 1, 1971,[2] the annual fee to be charged by [North Central] and to be paid by [District], shall be that amount equal to the amount which would be actually collected from a tax levy of not to exceed three cents ($.03) per one hundred dollars ($100.00) of assessed valuation of all taxable, tangible property within the boundaries of [District], the exact rate to be determined each year by [North Central]. Any amount so collected and received by [District] shall be remitted to [North Central] immediately upon receipt thereof.

In its judgment entered on April 3, 1996, the trial court expressly found:

> 7. The provisions of paragraph four (4) of the contract may only be interpreted reasonably as meaning that the fee for dispatching services for 1994 was the amount of monies actually collected from the 1994 tax levy of [District], whenever that money is received.

District argues paragraph # 4 "does not unambiguously resolve whether payments are to be made based upon the preceding or succeeding year of collection." The contract could have, but did not, specify which year's tax levy, the preceding or current year's, would be the basis for calculating consideration. It merely states "the annual fee ... shall be that amount equal to the amount

---

1. Both parties claim the agreement was effective as of the retroactive date of January 1, 1971. However, the agreement provides, "The Effective Date of this Contract shall be the date when it is actually duly executed by both parties."

2. January 1, 1971 could not be "[a]fter the first year of this contract."

which would be actually collected from a tax levy." It would have been a simple matter to have agreed, "the taxes collected on the District's 1971 levy shall be the consideration for 1971 dispatching services" or, "for 1972 services."

■ In accord with our standard of review and the existence of ambiguities, the legal issue is whether there is a material issue of fact, on the meaning of the agreement, still in dispute. We find that there is.

■ In a breach of contract action, where the terms of a contract are ambiguous and in dispute, we may consider the interpretation or understanding placed upon the contract by the parties, as shown by their acts and conduct. *Penberthy v. Nancy Transp., Inc.,* 804 S.W.2d 404, 408 (Mo.App.1991). An affidavit of the accountant of District would support a finding the relevant levy for setting the basis for consideration was the levy passed in the previous year. In his sworn affidavit, the accountant stated,

> For 1971 services rendered ... District paid to North County Central, from its general revenue fund, a sum of money commensurate to the amount which would have been actually received by the District if it had enacted an appropriate tax levy in 1970 ...;
>
> For 1972 services rendered, the District paid to North Central those revenues actually received by the District as a result of its 1971 tax levy; and ...
>
> For services rendered for each year from 1973 through October 31, 1994, the District has paid to North Central those revenues actually received by the District as a result of the emergency dispatching tax levied in the prior calendar year,....

A conflicting affidavit of a former director of District affirms that the levy, tax and collection of a particular year was the consideration for the same year's services.

It is undisputed that, in 1969, and in 1970, District paid North Central $5,000 per year for dispatching services under a prior agreement. In January 1971, District adopted a resolution to pay North Central the sum of $5,000 for dispatching services in the calendar year 1971. In May of 1971, District enacted a tax levy which was billed by the collector in September or October and was due by December 31, 1971. District paid North Central $19,953.60 in the calendar year 1971. In response to an interrogatory, North Central submitted a handwritten document which set forth the money it had received from District in each year between and including 1969 and 1994. The amounts paid each of the years from 1971 to 1994 steadily increased from $19,953.60 to $161,-939.61 in 1994. District paid North Central $21,919.35 in 1972.

District argues that because North Central has received 26 payments and has provided 26 years of service, it owes a partial refund for the last year, thus, it is not entitled to any more payments. However, this dispute cannot be resolved by the amount paid each year. The parties do not dispute these amounts, but the basis of the calculation of these amounts was not determinable from the facts offered to the trial court. Neither party submitted evidence which connects a particular sum paid in any year to a particular tax levy. Thus, for example, the amount paid in 1978, $40,929.15, may have been derived, in part, from either the 1978 levy, the 1977 levy or both. It may also include delinquent payments from years before 1977. Additional facts may be provided to support a finding on how much was realized on the levy for each year and when the taxes were paid to District, or, at trial, the court can resolve the dispute. These facts, or some other factual basis to support a finding of how the parties performed under the ambiguous compensation provisions, are required to support declaration of the parties' rights and obligations at the time of cancellation if the dispute is to be revolved by summary judgment. For example, if the 1971 levy produced $19,953.60 in 1971 taxes, and that accounts for the 1971 payment, then the conduct of the parties would support North Central's interpretation. If the 1971 levy produced the taxes paid to District in 1972 and paid by District to North Central in 1972, $21,919.35, then that would support District's position. Resolution of the dispute depends on extrinsic evidence. If none of the necessary facts required to correspond the levy

with the taxes paid as consideration are available, then the conflicting evidence will be the factual dispute at a trial.

■ The summary judgment facts are insufficient to support summary judgment. The trial court did not have authority to weigh credibility on conflicting affidavits in determining summary judgment. The trial court and the parties should not infer any opinion of this court on the merits. Accordingly, we reverse and remand.

RHODES RUSSELL, P.J. and SIMON, J., concur.