Byron GLENN, M.D., and Cape Urgent Care, Inc., Appellants,

v.

HEALTHLINK HMO, INC., Health-Link, Inc., Anthem Blue Cross and Blue Shield, and Wellpoint, Respondents.

No. ED 96233.

Missouri Court of Appeals, Eastern District, Southern Division.

Jan. 3, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 7, 2012.

Application for Transfer Denied April 3, 2012.

Jeffrey P. Hine, Osburn, Hine, Yates & Murphy, L.L.C., Cape Girardeau, MO, for Appellants.

Michael J. Tuteur, Foley & Lardner LLP, Boston, MA, Joseph C. Blanton, Jr., John E. Cozean, Blanton, Rice, Nickell, Cozean & Collins, L.L.C., Sikeston, MO, for Respondents.

KURT S. ODENWALD, Chief Judge.

## Introduction

Dr. Byron Glenn (Glenn) appeals from the trial court's order granting summary judgment for HealthLink HMO and HealthLink PPO (collectively "Health-Link"). Glenn brought separate claims for breach of contract alleging HealthLink breached the HMO Agreement and PPO Agreement it had with Glenn. The petition avers various breaches of these agreements. The trial court concluded that no genuine issues of material fact existed to support Glenn's claims, and held that HealthLink was entitled to judgment as a matter of law. Because the record supports a finding that a genuine issue of material fact exists with regard to two of Glenn's claims for breach of contract, we reverse the trial court's entry of summary judgment with regard to these two claims and remand those claims to the trial court. We affirm the remainder of the trial court's entry of summary judgment.

## Factual and Procedural History

In 2001, Glenn executed HMO and PPO agreements to become a network provider for HealthLink. Each agreement contained an automatic renewal provision and procedures for the termination or non-renewal of the agreements. On June 28, 2007,[1] after receiving complaints regarding the services Glenn provided to employees of one of its clients, HealthLink mailed Glenn two certified letters informing him

---

1. Glenn did not receive the letters until August 14, 2007.

of its intention to terminate the HMO and PPO Agreements. The letters informed Glenn that the HMO Agreement would terminate after 90 days, and the PPO Agreement would terminate in 120 days. The letters further informed Glenn that he had the right to request a hearing prior to the termination of either agreement. Glenn requested hearings regarding the termination of both agreements.

On October 30, 2007, HealthLink mailed Glenn a third letter. This letter stated that HealthLink believed its earlier communication terminating the HMO Agreement was deficient because it failed to provide a reason for the termination. As such, HealthLink rescinded its June 28, 2007 notice that it was terminating the HMO Agreement. However, the letter continued that HealthLink was again giving notice that it intended to terminate the HMO Agreement "due to quality of care issues," and offered Glenn the opportunity for a hearing to contest the termination of the HMO Agreement. The letter also reaffirmed HealthLink's earlier notice that it was terminating the PPO Agreement, but stated that its earlier offer to provide a hearing regarding the termination of the PPO Agreement was "an administrative error," and no hearing would be provided.

On November 30, 2007, Glenn filed a petition seeking a temporary restraining order preventing a hearing regarding the termination of the HMO Agreement. Although the circuit court denied the request, HealthLink canceled the hearing and, for a second time, withdrew its notice to terminate the HMO Agreement. Six months later, in a letter dated May 8, 2008, HealthLink informed Glenn of its intention to non-renew the HMO Agreement. The current contract term was set to end on July 14, 2008. The letter provided Glenn notice of HealthLink's intent to non-renew in excess of the 60 day contract require-

ment. In its letter, HealthLink offered Glenn an opportunity for a hearing, but Glenn declined. On May 29, 2008, Glenn's name was removed from two of HealthLink's online provider directories although Glenn's HMO Agreement continued until July 14, 2008. HealthLink extended Glenn's continuation of care period until December 2008. In late December, 2008, HealthLink discontinued listing Glenn in the remainder of its online provider directories.

In February 2010, Glenn filed his Second Amended Petition against HealthLink seeking damages for breach of contract. After an opportunity for discovery, HealthLink moved for summary judgment and the trial court granted the motion. Glenn now appeals.

### Points on Appeal

Glenn raises four issues on appeal, all of which he alleges apply to both the HMO and PPO Agreements. First, Glenn argues that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether HealthLink breached the HMO and PPO Agreements by failing to provide marketing assistance as required under the terms of both contracts. Second, Glenn contends that the trial court erred in granting summary judgment because the record contains a question of fact as to whether HealthLink failed to properly pay Glenn in-network reimbursement rates. Third, Glenn asserts that the trial court erred in granting summary judgment because Glenn was entitled to a hearing prior to the non-renewal of the HMO Agreement and the termination of the PPO Agreement. In his final point on appeal, Glenn argues that the trial court erred in granting summary judgment because HealthLink did not end the HMO and PPO agreements in good faith.

*Standard of Review*

We review the entry of summary judgment *de novo. Rice v. Shelter Mut. Ins. Co.,* 301 S.W.3d 43, 46 (Mo. banc 2009). We review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We will affirm where the pleadings, depositions, affidavits, answers to interrogatories, exhibits, and admissions establish that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Beyerbach v. Girardeau Contractors, Inc.,* 868 S.W.2d 163, 165 (Mo.App. E.D.1994).

*Discussion*

I. *The trial court erred in part by granting summary judgment to HealthLink on Glenn's marketing claims.*

Glenn argues that the trial court erred in granting summary judgment in favor of HealthLink on his claims that HealthLink breached its obligations to provide marketing assistance under the HMO and PPO Agreements. Section 2.10(a)(vi) of the HMO Agreement states that HealthLink HMO will provide "marketing of Health-Link HMO Providers." Section 2.8(a)(f) of the PPO Agreement contains an identical provision. Glenn first argues that there is a genuine issue of material fact as to what level of performance was required to satisfy HealthLink's marketing obligations under these provisions. Glenn contends that merely listing Glenn as a provider in HealthLink's online directories does not satisfy HealthLink's marketing obligations under the HMO and PPO Agreements. As a separate basis for breach of contract, Glenn asserts that HealthLink breached the HMO and PPO Agreements when it removed his name from two of the online

provider directories prior to the expiration of the agreements.

**A. Performance of HealthLink's marketing obligations.**

■ We hold Glenn's claim that a genuine issue of material fact exists as to the level of performance required to satisfy HealthLink's obligation under the marketing assistance provisions to be without merit. Importantly, Glenn does not allege what additional performance, if any, was required to satisfy HealthLink's obligations under the marketing provisions of the HMO and PPO Agreements. In his deposition, Glenn did not articulate any specific performance required to satisfy HealthLink's duties under the Agreements beyond identifying Glenn as a provider in HealthLink's online provider directories. Glenn cannot create a genuine issue of material fact by arguing that HealthLink may have breached the agreement, without alleging facts that support his claim of breach. *ITT,* 854 S.W.2d at 382 ("A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous."). Because Glenn offers no evidence to support his general argument that "something more" was required of Health-Link to perform its marketing obligations under the Agreement, the trial appropriately entered summary judgment in favor of HealthLink on this portion of Glenn's first point on appeal.

**B. Removal of Glenn's name from provider directory.**

■ Glenn's contention that HealthLink breached the agreements by removing his name from several of the online provider directories prior to the termination of the HMO and PPO Agreements is more troubling. The evidence is uncontroverted that HealthLink removed Glenn's name from the HMO and Open Access I online provider directories on May 29, 2008 even

though Glenn's HMO Agreement was in effect until July 14, 2008. Glenn contends that a genuine issue of fact exists for the jury to determine if HealthLink breached its duty to provide marketing assistance by removing Glenn's name from these provider directories prior to the expiration of the HMO Agreement. We agree.

HealthLink concedes that it removed Glenn's name from the HMO and Open Access I online provider directories prior to the expiration of the HMO Agreement. However, HealthLink argues its action did not breach the HMO agreement and therefore mandates summary judgment in its favor because "virtually all of the Health-Link membership in the Cape Girardeau area consisted of subscribers in groups that accessed the HealthLink PPO, Open Access II, or Open Access III networks." The essence of HealthLink's argument is that there were few if any subscribers to the groups for which Glenn's name was prematurely removed. Even accepting HealthLink's argument as true, this argument relates only to the damages Glenn may have suffered as a result of Health-Link's action in prematurely deleting his name from the provider list, and does not preclude the finding of a breach of contract by a jury. The HMO Agreement clearly requires HealthLink to provide marketing assistance to Glenn, and HealthLink acknowledges that the only marketing assistance it provided under the HMO Agreement was identifying physicians in its provider directories. We are not persuaded that this claim fails to present a genuine issue of material fact when the summary judgment evidence shows that HealthLink deleted Glenn's name from its online provider directories prior to the end of the agreement.

■ If a jury concludes that Health-Link failed to market Glenn in its online provider directories for the full duration of the HMO Agreement, Glenn may be entitled to at least nominal damages. "[N]ominal damages are available where a contract and its breach are established." *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. banc 1999) (internal citations omitted); *Hanna v. Darr*, 154 S.W.3d 2, 5 (Mo.App. E.D.2004). The existence of nominal damages is sufficient to preclude summary judgment. *Shirley's Realty, Inc. v. Hunt*, 160 S.W.3d 804, 808–9 (Mo.App. W.D.2005). Health-Link admitted the potential for damages in its Reply to Plaintiffs' Opposition to Motion for Summary Judgment, stating that Glenn was removed from the directories after May 29, 2008 and "[a]ny damages that would flow from this inadvertent deletion would be nominal." Evidence that HealthLink deleted Glenn from the provider list, coupled with evidence that Glenn may be entitled to at least nominal damages as a result of the deletion establishes a genuine issue of fact on Glenn's claim of breach of contract relating to HealthLink's obligation to provide marketing assistance under the HMO Agreement. Accordingly, we hold the trial court erred in entering summary judgment in favor of HealthLink on this claim. Glenn's first point in appeal, as it relates to the HMO Agreement, is granted with regard to this issue only.

With regard to the PPO Agreement, Glenn argues that a genuine issue exists to establish HealthLink's breach of its marketing obligation by the removal of Glenn's name from some of HealthLink's online provider directories. We find Glenn's argument to be without merit because the uncontroverted evidence shows that the PPO Agreement ended on October 18, 2007, and Glenn's name was not removed from any of the PPO online provider directories until May 29, 2008, long after the termination of the PPO Agreement. Although Glenn directs our atten-

tion to evidence that HealthLink extended the continuation of care period of the PPO Agreement until December 2008, the evidence is uncontroverted that the continuation of care period only extended HealthLink's obligation to pay in-network provider compensation rates, not Health-Link's obligation to continue providing marketing assistance. Point One is denied as to Glenn's claims under the PPO Agreement.

II. *The trial court erred in granting summary judgment as to Glenn's claims that HealthLink failed to pay in-network compensation rates.*

█ In his second point on appeal, Glenn argues that HealthLink breached the HMO and PPO Agreements by failing to pay contract reimbursement rates. We address each argument in turn.

To avoid summary judgment, the non-movant must show a genuine dispute as to a material fact. *ITT,* 854 S.W.2d at 377; Rule 74.04.[2] To show the existence of a genuine factual dispute, the record must contain competent materials that evidence different accounts of essential facts. *ITT,* 854 S.W.2d at 382. "Only *genuine* disputes as to material facts preclude summary judgment." *Goerlitz v. City of Maryville,* 333 S.W.3d 450, 453 (Mo. banc 2011) (emphasis added). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT,* 854 S.W.2d at 382. The trial court may not weigh the credibility on conflicting affidavits in determining summary judgment. *North Cent. County Alarm System, Inc. v. Maryland Heights Fire Protection Dist.,* 945 S.W.2d 17, 21 (Mo. App. E.D.1997).

Glenn offered into evidence an affidavit stating that he was not paid in-network provider rates for his treatment of Health-Link patients during November and December 2008. Glenn also submitted "Explanation of Benefit" forms for December 2008. Glenn contends these forms support his claim that he was not paid the agreed contract rates during this time.

HealthLink offered evidence that Glenn was properly paid the agreed contract rates. First, HealthLink offered as evidence an affidavit from Mary Ellen Detrick, HealthLink's Director of Grievances and Appeals. In her affidavit, Detrick attested that she reviewed the applicable records and concluded that Glenn was paid as an in-network provider until December 19, 2008. HealthLink also submitted records of its payments to Glenn during the time in question, and argues that these records show that Glenn was properly paid under the Agreements. While, the records set forth the amount of the payments made, they do not indicate whether the claims were processed as in-network or out-of-network claims.

Given the facts and evidence presented at this stage of the proceeding, we agree that the record supports a finding that a genuine issue of material fact exists as to whether HealthLink breached the HMO Agreement by failing to pay contract rates. The HMO Agreement ended on July 15, 2008. Section 5.6(b) of the HMO Agreement requires HealthLink to continue to pay Glenn in-network provider rates for a period of 90 days after the termination. However, there is summary judgment evidence that HealthLink voluntarily permitted Glenn to remain in the HMO provider network until December 18, 2008, and that Glenn relied upon HealthLink's promise that his status as an in-network provider would be extended to December 18, 2008, as he continued to treat Health-Link patients. A jury could find from the

**2.** All rule references are to Mo. R. Civ. P.2011 unless otherwise indicated.

evidence that HealthLink, having permitted Glenn to remain as an in-network provider until December 2008, was obligated to pay in-network compensation rates until December 18 2008. Glenn alleges in his affidavit that HealthLink failed to pay contract rates during November and December of 2008. Under *ITT* and Rule 74.04, Glenn's affidavit and the documents submitted by Glenn create a genuine question of fact as to whether HealthLink breached the HMO Agreement by failing to pay in-network provider compensation rates during November and December 2008. HealthLink has produced a contrary affidavit and business records to support its claim that Glenn received the contractually required in-network payments. While HealthLink's affidavit and records may be persuasive to a jury, HealthLink's evidence does not affect the propriety of summary judgment because the trial court was not permitted to make credibility determinations between parties' opposing evidence. *See Id.* The evidence presented by Glenn is sufficient to establish the existence of a genuine issue of fact that defeats summary judgment and allows submission of this claim to the jury.

Similarly, although the PPO Agreement ended on October 18, 2007, evidence shows that HealthLink voluntarily extended the 90–day continuation of care period of the PPO Agreement until December 18, 2008. Similar to the HMO Agreement, Glenn has introduced evidence that he relied upon HealthLink's promise to pay in-network provider compensation rates through that date, and continued to treat HealthLink patients. Again, Glenn's affidavit creates a genuine question of fact as to whether HealthLink failed to pay in-network provider compensation rates. Accordingly, we find that the trial court erred in grant-

ing summary judgment in favor of Health-Link on both claims. Point granted.

III. *The trial court properly granted summary judgment in favor of HealthLink on Glenn's claims relating to hearings.*

In his third point on appeal, Glenn argues that the trial court erred in granting summary judgment because questions of fact exist as to whether HealthLink breached the HMO and PPO Agreements by not providing hearings to Glenn prior to its termination of the PPO Agreement and non-renewal of the HMO Agreement. While a factual dispute may exist as to whether HealthLink provided Glenn the opportunity for a hearing, we first consider whether HealthLink was obligated to provide a hearing to Glenn under the agreements. If no hearing was required under the agreements, then HealthLink is entitled to judgment as a matter of law on Glenn's claims.

The foundation of Glenn's argument that HealthLink's failure to provide a hearing violates the HMO Agreement stems from HealthLink's earlier attempts at termination. Because HealthLink's original attempt to terminate the agreement required a hearing under Section 354.609[3], Glenn posits that HealthLink's non-renewal of the HMO Agreement is similarly subject to a hearing requirement because the non-renewal was tantamount to termination. Glenn further contends that HealthLink violated the PPO Agreement by not providing a hearing because HealthLink offered Glenn a pre-termination hearing, and was thereafter bound by that offer.

A. HMO Agreement.

Glenn makes a two-prong argument that HealthLink violated the HMO Agreement

---

3. All statutory references are to RSMo. Cum. Supp.2009 unless otherwise indicated.

when it did not provide him a hearing prior to ending the Agreement. Glenn argues that HealthLink was first obligated to provide a pre-termination hearing once it delivered to Glenn the initial letter announcing its intent to terminate the agreement. Glenn next argues that HealthLink was again obligated to provide a hearing when it later announced its decision to non-renew the HMO Agreement. We address each argument separately.

1. *HealthLink was not statutorily required to provide a pre-termination hearing.*

■ Section 354.609.2(1) states that "[a] health carrier shall not *terminate* a contract with a health care professional unless the health carrier provides to the health care professional a written explanation of the reasons for the proposed contract *termination* and an opportunity for a review or hearing as hereinafter provided." Section 354.609.2(1) (emphasis added).

We recognize that HealthLink initially stated its intent to terminate the HMO Agreement with Glenn. We agree with Glenn, that at that time, HealthLink was obligated to provide a hearing. However the uncontroverted evidence before us shows that HealthLink withdrew its notice of termination, and instead opted to exercise the non-renewal provisions of the HMO Agreement upon the expiration of the agreement. The plain language of Section 354.609 only requires a hearing prior to a contract termination. Because HealthLink did not terminate the HMO Agreement, as a matter of law, it did not violate Section 354.609.2.

2. *HealthLink was not required to provide a hearing prior to non-renewal.*

■ Glenn next argues that Health-Link was obligated both contractually and statutorily to provide Glenn a hearing prior to its non-renewal of the HMO Agree-

ment. Glenn is correct that HealthLink is required under Section 354.609 to provide Glenn a hearing prior to terminating the HMO Agreement. Section 354.609.2(2)(b). However, as noted above, the evidence is uncontroverted that HealthLink did not terminate the HMO Agreement, but exercised its authority to not renew the agreement upon its expiration. This distinction is legally significant as neither the HMO Agreement nor Section 354.609 imposes an obligation on HealthLink to provide Glenn a hearing prior to the non-renewal of an HMO agreement.

Despite this absence of a statutory or contractual requirement, Glenn contends that HealthLink was required to provide a hearing because HealthLink treated the non-renewal as if it were a termination, and was therefore bound by the statutory and contractual requirements governing termination. As evidence supporting his claim, Glenn submits a May 8, 2008 letter from HealthLink, suggesting that Health-Link treated Glenn's non-renewal as a termination. In this letter, HealthLink stated that it was non-renewing the HMO Agreement and that Glenn was required to abide by Sections 3.8 and 5.6(b) of the agreement. As Glenn notes, Section 5.6(b) governs the rights and obligations of a physician after an HMO Agreement has been *terminated.* The plain language of Section 5.6(b) does not apply to physicians whose contracts are non-renewed. Glenn argues that HealthLink's reference to this termination provisions in this letter evidences HealthLink's understanding that there is no procedural distinction between a termination and a non-renewal of a physician's contract. Accordingly, Glenn asserts HealthLink's obligations upon either termination or non-renewal are the same, thereby equally obligating HealthLink to provide Glenn a hearing under either factual scenario. We disagree.

When interpreting a contract, we may consider extrinsic evidence only if we have first found the terms of the contract ambiguous. *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 860 (Mo. banc 2006). Whether a contract is ambiguous is a question of law. *Zeiser v. Tajkarimi,* 184 S.W.3d 128, 133 (Mo.App. E.D.2006). "[A] contract is only ambiguous, and in need of a court's interpretation, if its terms are susceptible to honest and fair differences." *Vincent,* 194 S.W.3d at 860. (internal quotations and citations omitted). "A contract is not ambiguous merely because the parties disagree as to its construction." *Id.* "If the language of a contract is unambiguous, the intent of the parties will be gathered solely from the terms in the contract." *Id.*

In this case, it is uncontroverted that Section 5.2 of the HMO Agreement does not require a hearing prior to a non-renewal. The full text of Section 5.2 reads:

*Contract Renewal.* After the expiration of the initial term, this Agreement shall automatically renew for successive contract terms of twelve (12) months each, unless either party elects not to renew this Agreement by giving the other party written notice of its election not to renew this Agreement at least sixty (60) days prior to the end of the then current contract term.

The plain language of Section 5.2 provides that 60 days' notice was the only precondition that either party, including Glenn, was required to meet prior to exercising the contractual option to not renew the contract. The plain text of the HMO Agreement does not provide for a hearing upon either party's election to not renew the agreement. Because Section 5.2 is unambiguous, we look solely to the terms of the HMO Agreement, and will not consider extrinsic evidence to vary the terms of the agreement. The plain and unambiguous wording of the HMO Agreement does not support Glenn's proposed construction. Accordingly, we hold that HealthLink was not obligated under the terms of the HMO agreement to provide Glenn a hearing prior to exercising the non-renewal provisions of the Agreement. Point denied.

**B. PPO Agreement.**

Glenn also argues that HealthLink was required to provide him a hearing prior to its termination of the PPO Agreement. The evidence supports Glenn's claim that HealthLink offered Glenn a hearing when it first gave Glenn notice of its intent to terminate the PPO Agreement. In its June 28, 2007 letter, HealthLink notified Glenn that it was terminating the PPO Agreement, and stated "you have the right to request a hearing, at your discretion, before a panel appointed by HealthLink." However, the evidence also shows that HealthLink subsequently withdrew its offer to provide a hearing, claiming that the offer was "an administrative error." Glenn argues that, error or not, HealthLink is bound by its promise, thereby establishing a genuine issue of material fact on its claim of breach of the PPO Agreement. We disagree.

The parties agree that HealthLink was not contractually obligated to provide a pre-termination hearing under the express terms of the PPO Agreement. In reviewing the record, we find no evidence that HealthLink's offer to provide a hearing was supported by any consideration from Glenn. An offer not supported by consideration may be revoked at will in the absence of a substitute for consideration. *See Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 24–25 (Mo.App. W.D.2008), *citing, Vincent,* 194 S.W.3d at 859. The record contains no evidence that would allow a jury to find that HealthLink was contractually required to provide a hearing under the PPO Agreement.

Glenn next argues that despite the lack of a contractual obligation under the PPO Agreement, HealthLink is estopped from avoiding its obligations to provide Glenn the hearing promised in its June 28 letter because Glenn justifiably relied on that promise when he continued to treat HealthLink patients at reduced rates. "In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). Promissory estoppel requires: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Id.* at 590. Equitable relief through promissory estoppel is inappropriate where a claimant seeks money damages or has other adequate legal remedies available. *Id.* at 591; *Birkenmeier v. Keller Biomedical, L.L.C.*, 312 S.W.3d 380, 389 (Mo.App. E.D.2010).

We recognize that evidence of promissory estoppel may support a finding that a genuine issue of material fact exists with regard to a claim for breach of contract, and consequently defeat a motion for summary judgment. However, we do not find in the record before us the requisite evidence to support Glenn's claim of promissory estoppel. Glenn is unable to establish a critical element of promissory estoppel: that only the enforcement of HealthLink's offer to provide a hearing can prevent injustice. Notably, Glenn does not seek enforcement of HealthLink's offer to provide a PPO hearing, but seeks money damages as a result of Health-Link's failure to provide said hearing. Promissory estoppel is an equitable remedy unavailable here due to the nature of

Glenn's claim, which seeks money damages. *See Id.*

The summary judgment evidence before this Court simply does not support a finding that a genuine issue of fact exists that would establish HealthLink's obligation to provide Glenn a pre-termination hearing under the PPO Agreement, either as a contractual obligation, or as a result of promissory estoppel. Point denied.

IV. *The trial court correctly entered summary judgment against Glenn's claims that HealthLink breached the HMO or PPO Agreements by failing to act in good faith.*

In his final point on appeal, Glenn argues that HealthLink breached the HMO and PPO Agreements by ending each agreement in violation of its duty to act in good faith. In Missouri, all contracts have an implied covenant of good faith and fair dealing. *Farmers' Electric Co-op., Inc. v. Missouri Dept. of Corrections*, 977 S.W.2d 266, 271 (Mo. banc 1998). A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the movant the expected benefit of the agreement. *Missouri Consolidated Health Care Plan v. Community Health Plan*, 81 S.W.3d 34, 46–47 (Mo.App. W.D.2002). The purpose of the covenant of good faith is to prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party. *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo.App. W.D.2009).

However, an implied covenant will not be imposed where the parties expressly address the matter at issue in the contract. *State v. Nationwide Life. Ins. Co.*, 340 S.W.3d 161, 194 (Mo.App. W.D.

2011). Nor does a party breach its implied duty of good faith and fair dealing by ending a contractual relationship in the manner provided by the contract. *Id.* ("There is no authority for the proposition that a party has an implied duty of good faith and fair dealing to agree to renew a contract that is set to expire by its negotiated terms.").

**A. HealthLink's non-renewal of the HMO Agreement was not in bad faith.**

■ Glenn avers that a question of fact exists as to whether HealthLink's non-renewal of the HMO Agreement was a breach of its implied duty to act in good faith. Again, we note that there is no dispute as to the facts necessary to resolve this issue. It is uncontroverted that HealthLink attempted to terminate the HMO Agreement on two occasions, but withdrew both attempts. It is also undisputed that HealthLink elected to not renew the HMO Agreement after giving proper notice under the express terms of the agreement. Given this context and in light of these facts, we are asked to determine whether, as a matter of law, HealthLink failed to act in good faith when it did not renew the HMO Agreement.

■ We hold that HealthLink did not violate its duty to act in good faith when it chose not to renew the HMO Agreement without affording Glenn a hearing. As discussed above, the HMO Agreement provided either party the option to not renew the agreement by giving 60 days' written notice of the party's intent to non-renew the HMO Agreement. The record demonstrates that HealthLink exercised its option to not renew the agreement in a letter dated more than sixty days before the end of the then-current contractual term of the HMO Agreement. We find no evidence to suggest that HealthLink did not follow the express terms of the contract in the manner contemplated by the parties at the

execution of the agreement when it elected not to renew the HMO Agreement. A party does not violate its covenant to act in good faith by terminating an agreement according to its terms without evading the spirit of the agreement or depriving the non-terminating party of the benefit of the agreement. *Nationwide,* 340 S.W.3d at 194. We find no evidence in the record before us that HealthLink's decision evaded the spirit of the agreement, or otherwise deprived Glenn of the benefit of the agreement.

We agree that the evidence clearly shows HealthLink's initial intent was to terminate Glenn under the contract provisions. Only after two misfires, did HealthLink proceed under the non-renewal clause. Even if we were to conclude that HealthLink exercised its right to non-renew to avoid the hearing obligation of a termination, there is no evidence in the record that HealthLink's decision to bring its relationship with Glenn to an end was made for the purpose of depriving Glenn of the benefits of the agreement, or to undermine the contractual relationship. The only evidence as to the reason behind HealthLink's actions relates to concerns raised as to the care provided by Glenn. Acting on such concerns, in this case, cannot be construed as acting in bad faith. *See Community Health Plan,* 81 S.W.3d at 46–47. Because HealthLink's nonrenewal of the HMO Agreement was in conformity with the terms and the spirit of the agreement, we find that HealthLink did not breach its obligation to act in good faith. Point denied.

**B. HealthLink did not terminate the PPO Agreement in bad faith.**

■ Glenn's final argument is that HealthLink breached the PPO Agreement by terminating the contract in bad faith. Glenn concedes that the PPO Agreement

allowed HealthLink to determine whether a pre-termination hearing was warranted. Again, Glenn argues that once HealthLink offered him a hearing, its withdrawal of the offer amounted to bad faith. We disagree.

■ Unlike HMO agreements, Missouri law does not guarantee physicians a statutory right to a hearing prior to the termination of a PPO agreement. Therefore, whether a PPO agreement is properly terminated is solely determined by the terms of the agreement. Moreover, the termination of an agreement does not breach the covenant of good faith and fair dealing unless the termination would violate the spirit of the agreement, and would deny the non-terminating party the expected benefit of the agreement. *See Community Health Plan,* 81 S.W.3d at 46–47.

Here, the right of HealthLink to terminate the PPO Agreement is governed by Sections 6.3 and 6.5 of the PPO Agreement. Section 6.3 of the PPO Agreement provides:

> "Either party may terminate this Agreement with or without cause, by giving at least one hundred twenty (120) days prior written notice to the other party."

Section 6.5 of the PPO Agreement further states:

> "When expressly required by applicable law or otherwise deemed appropriate by HealthLink, (i) HealthLink will include an explanation of the reasons for the proposed termination in any notice of termination given by HealthLink, and (ii) if timely requested by [the physician], HealthLink will provide [the physician] with an opportunity for review or hearing as required by law and in accordance with HealthLink's applicable procedures."

The evidence is uncontroverted that HealthLink exercised its contractual right to terminate the PPO Agreement. The summary judgment evidence before us does not raise a genuine issue of fact that HealthLink, in exercising its right to terminate, deviated from the spirit of the agreement, or deprived Glenn of the benefit of the agreement. *See Community Health Plan,* 81 S.W.3d at 46–47. The plain language of the PPO Agreement unambiguously states that HealthLink had sole discretion to award or withhold a hearing before terminating the PPO Agreement. The duty to act in good faith only "prevents one party from acting in a manner that evades the spirit of the transaction or that denies the other party the expected benefit of the contract." *Edoho v. Bd. of Curators of Lincoln University,* 344 S.W.3d 794, 799 (Mo.App. W.D.2011). Here, the record does not contain evidence either that HealthLink's decision to terminate the PPO Agreement evaded the spirit of the agreement, or that Glenn was deprived of an expected contracted benefit.

Moreover, whether HealthLink's initial offer to provide a hearing was a gratuitous promise or a mistake is immaterial to Glenn's claim of breach of covenant of good faith. Under either theory, HealthLink was not bound by its offer to provide a hearing. *See Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 24–25 (Mo.App. W.D.2008), *citing, Vincent,* 194 S.W.3d at 859. Because HealthLink was never bound by its offer, Glenn could not have been deprived of any contractual benefit, nor could HealthLink have evaded the spirit of any agreement. Point denied.

*Conclusion*

The judgment of the trial court is affirmed in part, and is reversed in part. The trial court erred in granting summary judgment on Glenn's claims for breach of

contract relating to the removal of Glenn's name from the HMO provider directories and on Glenn's breach of contract claims based upon HealthLink's alleged failure to pay in-network provider rates from July 15, 2008, to December 19, 2008, under the HMO Agreement and from October 18, 2007, to December 18, 2008, under the PPO Agreement.

The judgment of the trial court is affirmed in all other respects, and is remanded for further proceedings consistent with this opinion.

SHERRI B. SULLIVAN and GARY M. GAERTNER, JR., JJ., concur.